GLEN NARRON v. HARDEE'S FOOD SYSTEMS, INC.

No. 847DC1127

(Filed 2 July 1985)

1. Appeal and Error § 6.2— partial summary judgment—appealable

A summary judgment for defendant in which the court expressly retained jurisdiction of defendant's counterclaim and did not certify that there was no just reason for delay nevertheless affected a substantial right of plaintiff and was appealable. G.S. 1A-1, Rule 54(b), G.S. 1-277, G.S. 7A-27.

2. Master and Servant § 9— Wage and Hour Act—forfeiture of benefits

The Wage and Hour Act requires an employer to notify the employee in advance of the wages and benefits which he will earn and the conditions which must be met to earn them, and to pay those wages and benefits when the employee has actually performed the work required to earn them. Once the employee has earned the wages and benefits under this statutory scheme, the employer is prevented from rescinding them, with the exception that for certain benefits such as commissions, bonuses and vacation pay an employer can cause a loss or forfeiture of such pay if he has notified the employee of the conditions for loss of forfeiture in advance of the time when the pay is earned. G.S. 95-25.2(16), G.S. 95-25.12, G.S. 95-25.13.

3. Master and Servant § 9— Wage and Hour Act—compensation for unused vacation—summary judgment for defendant improper

The trial court erred by granting summary judgment for defendant in an action in which plaintiff sought payment for accumulated vacation leave upon termination of his employment. A genuine issue of material fact existed as to whether plaintiff earned and accumulated vacation leave under a policy which did not provide for forfeiture of unused vacation leave.

APPEAL by plaintiff from *Sumner, Judge.* Judgment entered 20 September 1984 in District Court, NASH County. Heard in the Court of Appeals 14 May 1985.

Plaintiff, discharged from his employment with defendant, seeks to recover from defendant accumulated vacation leave under the Wage and Hour Act, G.S. 95-25.1 *et seq.*, plus exemplary damages and attorneys' fees. Defendant Hardee's Food Systems, Inc., answered plaintiff's complaint, asserting that all their personnel practices associated with plaintiff's discharge and his claim for vacation pay, complied with the Wage and Hour Act. Defendant asserted as a counterclaim plaintiff's wrongful conversion of company funds, or alternatively, the negligent loss of such funds. Defendant prayed for an award equal to the amount of funds al-

legedly converted or lost, plus punitive damages and attorneys' fees.

The trial court concluded that the Act "requires only that an employer comply with whatever policy or practice regarding vacation pay it may have in effect at the time of [an employee's] termination." Applying this conclusion to the facts if found to be uncontroverted, the court held that defendant had correctly denied vacation pay to plaintiff under the terms of the vacation policy in effect at the time of his termination.

The trial court entered summary judgment for defendant on plaintiff's claim and ordered that defendant's counterclaim was "not affected in any manner by the granting of this Motion or by this Order." Plaintiff appealed.

*Edelstein, Payne and Jordan, by Steven R. Edelstein, for plaintiff appellant.*

*Blakeney, Alexander & Machen, by W. T. Cranfill, Jr. and John C. Miller, for defendant appellee.*

MARTIN, Judge.

This appeal involves the interpretation of the Wage and Hour Act, G.S. 95-25.1 *et seq.* The specific issue raised is whether plaintiff had accumulated unused vacation for which he was entitled to be paid upon his termination from employment, where the employer's personnel policy under which plaintiff earned the vacation did not provide for forfeiture thereof, but the policy in effect at the time of his termination provided for such forfeiture. Because the record reveals a genuine issue of fact as to whether plaintiff had earned and accumulated vacation under the former policy, we hold that the trial court erred in entering summary judgment for defendant.

[1] We initially note that the judgment from which plaintiff appeals adjudicates "the rights and liabilities of fewer than all the parties" and expressly retains jurisdiction for the purpose of adjudication of defendant's counterclaim without a determination by the trial judge that "there is no just reason for delay" within the language of Rule 54(b) of the North Carolina Rules of Civil Procedure. Therefore, at first glance, this appeal may appear to be subject to dismissal as being from an interlocutory order and sub-

ject to dismissal as fragmentary and premature. G.S. 1A-1, Rule 54(b); *Leasing, Inc. v. Dan-Cleve Corp.*, 25 N.C. App. 18, 212 S.E. 2d 41 (1975); *Arnold v. Howard*, 24 N.C. App. 255, 210 S.E. 2d 492 (1974). However, we believe that a "substantial right" of the plaintiff is affected by the granting of summary judgment, so that the order granting defendant's motion for summary judgment is appealable under G.S. 1-277 and G.S. 7A-27. *See Nasco Equipment Co. v. Mason*, 291 N.C. 145, 229 S.E. 2d 278 (1976).

The question presented is whether the trial court erred in granting summary judgment for defendant. Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." G.S. 1A-1, Rule 56(c). In ruling on a motion for summary judgment, the trial judge does not decide issues of fact but merely determines whether a genuine issue of fact exists. *Vassey v. Burch*, 301 N.C. 68, 269 S.E. 2d 137 (1980); *Singleton v. Stewart*, 280 N.C. 460, 186 S.E. 2d 400 (1972). "However, summary judgments should be looked upon with favor where no genuine issue of material fact is presented." *Kessing v. Mortgage Corp.*, 278 N.C. 523, 534, 180 S.E. 2d 823, 830 (1971).

Applying this standard to the facts of this case, we find that summary judgment was inappropriately entered. The uncontradicted facts reveal that plaintiff commenced employment with defendant in November 1972. He managed one of defendant's restaurants in Greenville, North Carolina, from 15 August 1978 until February or March 1983, at which time he was transferred to Rocky Mount, North Carolina. At the end of April 1983, defendant discovered that deposits totalling $3,500.00 for the period of 23 February through 28 February 1983 were missing from the Greenville restaurant, formerly managed by plaintiff. After conducting an investigation, defendant suspended plaintiff without pay on 6 May 1983, and in November 1983, defendant converted plaintiff's suspension into a discharge due to "gross negligence with respect to company property."

Based upon corporate policies which became effective on or about 13 April 1983, defendant did not provide plaintiff with any vacation pay upon his discharge. Plaintiff received notice of these

policies through the following memorandum, dated 13 April 1983, which was sent to all restaurant managers:

SUBJECT: Termination for Cause — Vacation Pay

     I have been notified of a change in our current termination policy. The change is effective immediately and applies to *any employee* who is discharged for cause. The new procedure is that Hardee's will no longer pay unused vacation to *any* employee who has been justifiably "terminated for cause" . . . . A new policy is currently being drafted to cover this and will be distributed sometime during the next few months.

Plaintiff denied taking or misappropriating the missing funds. Defendant refused to pay plaintiff his accumulated vacation pay, asserting that plaintiff was dismissed for cause.

[2] The words of statutes should be given their ordinary meaning, unless it appears from the context, or otherwise in the statute, that a different sense was intended. *Abernethy v. Commissioners*, 169 N.C. 631, 86 S.E. 577 (1915). G.S. 95-25.12 of the Wage and Hour Act provides as follows:

     No employer is required to provide vacation for employees. However, if an employer provides vacation for employees, the employer shall give all vacation time off or payment in lieu of time off in accordance with the company policy or practice. Employees shall be notified in accordance with G.S. 95-25.13 of any policy or practice which requires or results in loss or forfeiture of vacation time or pay. Employees not so notified are not subject to such loss or forfeiture.

The Act also defines the term "wage" to include such wage-related benefits as "sick pay, *vacation pay*, severance pay, commissions, bonuses, and other amounts promised when the employer has a *policy or a practice of making such payments*." G.S. 95-25.2(16) (emphasis added). With the exception of statutory requirements to pay at least the current minimum wage and proper overtime, where applicable, the employer is free to offer the employee any wage he desires. G.S. 95-25.3; G.S. 95-25.4. Moreover, with respect to wage-related benefits, such as vacation pay, the employer can choose either to have no policy at all or to have any policy of his own choosing. G.S. 95-25.2(16); G.S. 95-25.12. Once

having chosen the wages and benefits for the employee, the employer is required to notify the employee at the time of hiring of the rate of pay and the policies on vacations and other wage-related benefits. G.S. 95-25.13(1). An employer may provide for loss or forfeiture of wages and benefits, or change the wages and benefits offered at any time, but prior to such change, the employer must notify the employee of the change in writing or through a posted notice, and the change can only have prospective application, except in the case of increases in wages and benefits. G.S. 95-25.13(3). Therefore, giving the statutory language its natural and ordinary meaning, the Wage and Hour Act requires an employer to notify the employee in advance of the wages and benefits which he will earn and the conditions which must be met to earn them, and to pay those wages and benefits due when the employee has actually performed the work required to earn them. Once the employee has earned the wages and benefits under this statutory scheme, the employer is prevented from rescinding them, with the exception that for certain benefits such as commissions, bonuses and vacation pay, an employer can cause a loss or forfeiture of such pay if he has notified the employee of the conditions for loss or forfeiture in advance of the time when the pay is earned.

[3] Under this statutory construction, the vacation pay due plaintiff at the termination of his employment was not, as the trial court held, controlled solely by defendant's vacation policy in effect at the time of termination. A genuine issue of material fact exists as to whether plaintiff may have been due vacation pay which he had earned under the earlier policy. This issue is created by plaintiff's assertion in his affidavit that he had met the requirements for vacation pay under defendant's prior personnel policies which contained no provision for forfeiture, and defendant's admission that it had changed its personnel policy pertaining to vacation pay shortly before plaintiff's discharge. If plaintiff earned and accumulated vacation under a vacation policy which did not provide for forfeiture of unused vacation, the Wage and Hour Act would dictate that plaintiff receive all vacation pay earned prior to defendant's change of personnel policy with regard thereto. Accordingly, the summary judgment appealed from is reversed.

Reversed.

Judges ARNOLD and PARKER concur.