HAROLD G. HAMILTON, PATRICIA PERRONE SANDERS, AND ALL OTHERS SIMILARLY SITUATED V. MEMOREX TELEX CORPORATION

No. 9310SC1081

(Filed 21 February 1995)

**1. Limitations, Repose, and Laches § 113 (NCI4th)— pay for unused vacation days—change in policy—action not time barred**

   Plaintiffs' action was not barred by the statute of limitations where plaintiffs brought the action under the Wage and Hour Act to recover the value of vacation days they had not taken before they were terminated where defendant had changed its vacation policy on 21 December 1988 from earning vacation days one year for use in the next to advancing days on 1 January for use in that year and plaintiffs filed their action on 3 April 1991. Plaintiffs suffered no injury until the defendant failed to pay them for vacation days they had allegedly earned in 1988; defendant's policy did not require it to pay cash for any unused vacation days until the employment was terminated and no individual plaintiff had a cause of action until next pay day after termination. The trial court correctly found that only those plaintiffs whose pay date next following termination preceded 3 April 1989 (two years prior to the filing of this action) were barred by N.C.G.S. § 95-25.22.

**Am Jur 2d, Limitation of Actions §§ 107 et seq.**

1

HAMILTON v. MEMOREX TELEX CORP.

[118 N.C. App. 1 (1995)]

2. **Labor and Employment § 56 (NCI4th)— unused vacation days—change in policy—termination of plaintiffs**

    The trial court properly found that defendant's refusal to pay plaintiffs for vacation days earned under defendant's old policy prior to 1 January 1989 was a violation of the Wage and Hour Act where defendant changed its policy on 21 December 1988 from earning vacation days one year for use in the next to advancing days on 1 January for use in that year, subject only to working for the company for six months before using vacation days; defendant terminated plaintiffs after changing the policy; and defendant refused to pay plaintiffs for vacation days accrued under the old policy. Once the employee has earned wages and benefits under the Wage and Hour Act the employer may not rescind them, except that certain benefits including vacation pay may be made subject to forfeiture so long as the employer notifies the employee of the conditions of such a forfeiture prior to the time he or she earns such benefits. N.C.G.S. § 95-25.1 *et seq.*

    **Am Jur 2d, Master and Servant § 80.**

3. **Labor and Employment § 56 (NCI4th)— unused vacation days—unilateral contract**

    The trial court did not err in an action to recover payment for unused vacation time lost when defendant changed its vacation accrual policy and then terminated plaintiffs by finding, as an alternative basis for its judgment, that defendant had breached a unilateral contract with plaintiffs. Defendant's old policy constituted a unilateral promise to grant an employee vacation in the next year if he worked in the previous one, which all of the plaintiffs accepted by working in 1988 and continuing to work through 1 January 1989.

    **Am Jur 2d, Master and Servant § 80.**

4. **Labor and Employment § 56 (NCI4th)— unused vacation days—employees terminated after change**

    The trial court erred by holding defendant liable for unused vacation time for employees terminated after 31 December 1989 (some plaintiffs were terminated before that time) where defendant changed its vacation policy from accumulating vacation days one year for use in the next to advancing vacation days on 1 January for use that year, with no carryover without permission, subject only to working for the company for six months, and with

the change announced in a memorandum on 21 December 1988. Defendant's policies concerning the carryover of vacation were valid and enforceable under the Wage and Hour Act; each policy was in place before the employees earned the vacation days thereby affected; none of the employees still employed after 31 December 1989 had any vacation days to carry over; and those employees suffered no loss when defendant paid them only for the days they had accrued in the year of their termination.

**Am Jur 2d, Master and Servant § 80.**

5. **Labor and Employment § 56 (NCI4th)— unused vacation days—determination of damages during liability phase of trial**

The trial court did not err in an action to recover the value of unused vacation days for which defendant refused to pay plaintiffs when they were terminated by making determinations of damages during the liability phase of the trial. Defendant offers no theory of how it was prejudiced by the court's consideration of these matters during the liability phase; moreover, these matters all concern defendant's liability to the class and do not involve defendant's liability to any particular plaintiff.

**Am Jur 2d, Master and Servant § 80.**

6. **Labor and Employment § 56 (NCI4th)— unused vacation days—pay rates—date of termination**

The trial court did not err in an action to recover the value of unused vacation days by concluding that plaintiffs were entitled to recover payment for their unused days at their respective pay rates on the date of termination, rather than the rates at the earlier date when defendant's policy on vacation accrual was changed. Plaintiffs' injury was defendant's failure to pay them for those days upon their termination and their action accrued on their respective dates of termination. Also, defendant's policy explicitly provided that vacation days would be paid "at the current base rate."

**Am Jur 2d, Master and Servant § 80.**

7. **Labor and Employment § 56 (NCI4th)— unused vacation days—six month employment limitation**

The trial court did not err in an action by terminated employees to recover the value of unused vacation days by awarding

damages to employees who had begun their employment within six months of 1 January 1989 but who had been employed by defendant for at least six months prior to their termination, where defendant's new vacation policy advancing leave for the year conditioned on six months employment took effect on 1 January 1989. Although the court may have erred in drafting its finding of fact regarding the policy, the plain meaning of defendant's policy is that an employee may not take vacation until he has worked for six months.

**Am Jur 2d, Master and Servant § 80.**

**8. Parties § 80 (NCI4th)— failure to pay for unused vacation days—class action—notice**

The trial court did not err by including in its judgment in a class action to recover the value of unused vacation days those class members whose notices were returned undelivered. Considering the number of plaintiffs involved and the availability of the plaintiffs' addresses from the company file, in addition to the fact that it is the defendant who disputed the notice, the notice was in accord with applicable class action law, providing for the best notice practical under the circumstances and being reasonably certain to inform those involved, affording each member the chance to opt out of the class. The form of the notice was not substantially less likely to bring home notice than any other feasible alternative.

**Am Jur 2d, Parties §§ 50 et seq.**

**9. Labor and Employment § 56 (NCI4th)— failure to pay for unused vacation days—liquidated damages—interest**

The trial court did not err by awarding liquidated damages to plaintiffs in an action to recover the value of unused vacation days lost when defendant changed its vacation policy and subsequently terminated plaintiffs where defendant argued that there was evidence to show that it changed the vacation policy solely for the purposes of accounting and that the change was an utterly proper, prospective alteration to its benefit scheme, so that it should not have to pay liquidated damages under N.C.G.S. § 95-25.22. However, the act that constituted the violation was the failure to pay plaintiffs for their vacation upon their termination, not the change in policy. Defendant pointed to no evidence to show that the failure to pay plaintiffs for their vacation days was

done in good faith or in the belief that it was not a violation of the Wage and Hour Act and N.C.G.S. § 95-22 mandated that the trial court award liquidated damages. The trial court erred, however, in awarding interest on the liquidated damages. While N.C.G.S. § 95-25.22 states that interest may be recovered on unpaid wages, it does not provide that interest is payable on liquidated damages.

**Am Jur 2d, Master and Servant § 80.**

10. **Labor and Employment § 56 (NCI4th)— class action— unused vacation days—terminated employees—common law contract claim—attorney fees**

The trial court did not err in allowing attorneys' fees for parties who recovered in a class action on common law contract claims but not on Wage and Hour Act claims for unused vacation days for which they were not paid on termination. The attorneys' work was not divisible between Wage and Hour claims and contract claims; the two claims were based on the same fundamental legal theory and, because the claims were similar, time spent litigating the contract claim directly benefitted those whose Wage and Hour claims were not time-barred.

**Am Jur 2d, Master and Servant § 80.**

11. **Discovery and Depositions § 55 (NCI4th)— class action— discovery—defendant ordered to produce information**

The trial court erred in a class action seeking compensation for vacation days lost when plaintiffs were terminated by compelling discovery when there was no outstanding discovery request. Plaintiffs had sent an interrogatory to defendant seeking information on all members of its class which was a continuing request, but plaintiffs did not contend that defendant failed to provide any information concerning members of the class as it was defined in the 18 November 1991 order certifying the class. Therefore, so long as the class continued to be defined as it was in the 18 November 1991 order, there were no unsatisfied discovery requests and the trial court erred by ordering defendant to produce information regarding people who were terminated. N.C.G.S. § 1A-1, Rule 37.

**Am Jur 2d, Depositions and Discovery §§ 361 et seq.**

**12. Labor and Employment § 56 (NCI4th)— unused vacation days—measure of damages**

The trial court erred in an action to recover the value of unused vacation days after defendant changed its vacation policy and terminated plaintiffs by failing to order defendant to pay employees terminated prior to 1 January 1990 the vacation leave pay promised under the old and new policies. By working in 1988, plaintiffs earned an allotment of vacation that could only be taken in 1989 and, under the new policy, plaintiffs earned vacation days that could be taken in that year. The two allotments were separate awards for separate periods of work, performed pursuant to two separate contracts.

**Am Jur 2d, Master and Servant § 80.**

Appeal by defendant from order entered 25 November 1991 by Judge Dexter Brooks, from order entered 18 December 1992 by Judge F. Gordon Battle, and from order and judgment entered 27 July 1993 by Judge Wiley Bowen, and appeal by plaintiffs from order entered on 18 December 1992 by Judge F. Gordon Battle, and from order and judgment entered 27 July 1993 by Judge Wiley Bowen in Wake County Superior Court. Heard in the Court of Appeals 26 May 1994.

Plaintiffs instituted this class action on 3 April 1991, to recover vacation pay defendant had allegedly failed to pay each of them upon the termination of their employment with defendant. Judge Brooks certified the class in an order entered 18 November 1991. The class consisted of individuals who: (1) were employed by defendant before 21 December 1988; (2) were terminated after 31 December 1988; and (3) were not paid for vacation time they allegedly earned in 1988, prior to the implementation of a new vacation policy. Upon a joint motion of the parties, the case was bifurcated as to issues of liability and damages.

Following a trial on 2 and 3 December 1992, Judge F. Gordon Battle entered an order finding defendant liable for compensatory and liquidated damages, interest and attorneys' fees. Plaintiffs filed a motion for summary judgment on damages and a motion for entry of judgment on 8 July 1993. Following a hearing on the matter, Judge Bowen granted the motions and entered judgment against defendant for $753,006.32 in damages and interest and $50,550.08 for attorneys' fees and expenses. On that same day the court entered an order to

HAMILTON v. MEMOREX TELEX CORP.

[118 N.C. App. 1 (1995)]

compel defendant to provide information concerning employees terminated after 31 July 1992.

Defendant and plaintiffs appeal.

*Patterson, Harkavy & Lawrence, by Donnell Van Noppen, III, and Gulley and Calhoun, by Michael D. Calhoun, for plaintiff-appellees.*

*Poyner & Spruill, L.L.P., by Cecil W. Harrison, Jr., and Robin T. Morris, for defendant-appellant.*

*Thomas A. Harris and Attorney General Michael F. Easley, by Associate Attorney General John A. Greenlee, for Commissioner of Labor Harry E. Payne, Jr., amicus curiae.*

ARNOLD, Chief Judge.

Defendant presents eleven arguments based upon thirty assignments of error and plaintiffs offer one argument based upon two assignments of error.

Plaintiffs are all former employees of defendant who had been employed by defendant at any time prior to 21 December 1988 and were terminated after 31 December of that year. Prior to 21 December 1988, the defendant's vacation policy (the old policy), which had been adopted in 1986, provided as follows: If an employee was hired prior to 1 August of a given year, the employee was entitled to five days of paid vacation during that year. However these days could not be taken until the employee had completed three months of continuous employment. If an employee was hired on or after 1 August, the employee was entitled to no vacation days in that year, but would be entitled to take ten days of vacation the next year, after completing six months of continuous employment. If an employee was terminated after completing six months of service, he would be paid for any unused vacation that was earned and payable on 1 January of that year.

On 21 December 1988, defendant notified all of its employees that, as of 1 January 1989, the vacation policy (the new policy) would be as follows: Vacation would be advanced on 1 January for use in that year. Vacation days were available for immediate use, but were "earned" over the course of the year. Upon termination, employees would be paid for the unused days they had earned up to that point in the year.

Plaintiffs contend that under the old policy they earned vacation in each year for use in the next. Thus, they contend that by working in 1988 they had earned their vacation for 1989, which would have vested on 1 January 1989. The change in policy meant that in 1989 they were entitled to those days they had earned in 1988, in addition to whatever days they earned in 1989 under the new policy. Plaintiffs contend that the defendant failed to pay them for the days they had accrued under the old policy when they were terminated.

On the other hand, defendants maintain that under the old policy the employees earned the vacation for each year merely by being in its employ on 31 December of one year and working on the first day in January of the next year. Under that interpretation, vacation was advanced at the beginning of each year, not earned in the previous one. The change in policy reflected only an accounting change, allowing the defendant to take the charges on its accounts over the course of the year, rather than on 1 January of each year.

---

## Defendant's Appeal

### I.

[1] First, defendant argues that the trial court erred in failing to determine that the statute of limitations barred plaintiffs' claim under the North Carolina Wage and Hour Act (the Act), N.C. Gen. Stat. §§ 95-25.1 to -25.25 (1989). We disagree.

Plaintiffs brought this action, at least partly, under the Act to recover for vacation days they had not taken before they were terminated. The Act provides:

> No employer is required to provide vacation for employees. However, if an employer provides vacation for employees, the employer shall give all vacation time off or payment in lieu of time off in accordance with the company policy or practice. Employees shall be notified in accordance with G.S. 95-25.13 of any policy or practice which requires or results in loss or forfeiture of vacation time or pay.

N.C.G.S. § 95-25.12. "Employees whose employment is discontinued for any reason shall be paid all wages due on or before the next regular payday. . . ." N.C.G.S. § 95-25.7. Vacation pay is included within the definition of "wage." N.C.G.S. § 95-25.2. Claims for unpaid wages and benefits under the Act are subject to a two year statute of limitations. N.C.G.S. § 95-25.22(f).

Defendant contends that the statute started to run on 21 December 1988 when it gave notice of the change in the vacation policy in accordance with section 95-25.12.

As was recently made plain in *Glover v. First Union National Bank*, 109 N.C. App. 451, 428 S.E.2d 206 (1993), defendant's argument is meritless. In that case the plaintiff sued the defendant to recover retirement benefits he was allegedly owed. The defendant argued that the statute of limitations barred his claim because any loss the plaintiff had suffered had occurred over twenty years previously when the retirement plan was amended. This Court rejected that argument, stating: "The statute begins to run on the date the promise is broken. In no event can the limitations period begin to run until the injured party is at liberty to sue." *Id.* at 455, 428 S.E.2d 208 (citation omitted).

In this case, the plaintiffs suffered no injury until the defendant failed to pay them for the vacation days they had allegedly earned in 1988. Defendant's policy did not require it to pay cash for any unused vacation days until the employment was terminated. Therefore, no individual plaintiff had a cause of action until the next pay day after termination. The trial court correctly found that only those plaintiffs whose pay date next following termination preceded 3 April 1989 (two years prior to the filing of this action) were barred by section 95-25.22. We reject defendant's first argument.

Secondly, defendant argues that the Act displaces all other remedies in this situation so that its statute of limitations, which is shorter than those for plaintiffs' common law actions, bars the entire action. Having found that the Act's statute of limitations does not bar this action, we need not address the defendant's preemption argument.

II.

[2]  Defendant next argues that the trial court erred in concluding that it had breached any obligation to the plaintiffs, because the old policy unambiguously provided that employees did not earn vacation in one year for use in the next. We disagree.

Defendant's old vacation policy provided:

First Year of Employment

If you are hired prior to August 1, you are eligible for five (5) days of vacation during the current calendar year after you have completed three (3) months of continuous service. You may take ten (10) days of vacation during the following calendar year.

If you are hired on or after August 1, you are eligible for ten (10) days of vacation to be taken during the following calendar year after you have completed six (6) months of continuous service.

. . . .

In the event your employment is terminated . . . you will be paid for any untaken vacation that was earned and payable on January 1 of that calendar year.

First, the trial court properly found that the defendant violated the Act by failing to pay plaintiffs for vacation days they had earned in 1988. Interpreted in its natural and ordinary meaning:

[T]he Wage and Hour Act requires an employer to notify the employee in advance of the wages and benefits which he will earn and the conditions which must be met to earn them, and to pay those wages and benefits due when the employee has actually performed the work required to earn them.

*Narron v. Hardee's Food Systems, Inc.*, 75 N.C. App. 579, 583, 331 S.E.2d 205, 208, *disc. review denied*, 314 N.C. 542, 335 S.E.2d 316 (1985). However, once the employee has earned the wages and benefits under this statutory scheme the employer may not rescind them, except that certain benefits, including vacation pay, may be made subject to forfeiture so long as the employer notifies the employee of the conditions of such a forfeiture prior to the time he earns such benefits. *Id.*

We believe that *Narron* controls our analysis in this situation. Like the trial court, we construe defendant's old policy to mean that by working for any time in one year, an employee earned the right to a full year's vacation in the next year, subject only to the requirement that he work six months before actually using the vacation days. Once the employees met the conditions, *i.e.* working in the previous year and being employed on 1 January of the next year, defendant could not rescind the benefits. The trial court properly found that defendant's refusal to pay plaintiffs for vacation days they earned under the old policy on 1 January 1989 was a violation of the Act.

[3] As an alternative theory for its judgment, the trial court found that the defendant breached a unilateral contract with plaintiffs when it refused to pay them for all of their unused vacation days. Again, we agree with the trial court's construction of defendant's policy.

As our Supreme Court established in *Roberts v. Mays Mills*, 184 N.C. 406, 114 S.E. 530 (1922), when an employer represents to an employee that he will receive a benefit after working a certain period of time, the employee may accept by entering or maintaining employment, and the employer cannot thereafter disavow the promise once the employee has started to work in reliance thereon. It matters not that the benefit is earned in the present but to be enjoyed in the future. Defendant's old policy constituted a unilateral promise to grant an employee vacation in the next year if he worked in the previous one. All of the plaintiffs accepted defendant's offer by working in 1988 and continuing to work through 1 January 1989, and they could not thereafter be divested of the promised vacation days.

Defendant argues that the interpretation we have adopted leads to the absurd conclusion that a person could start to work on 31 December of one year and then be entitled to a full year's vacation 1 January of the next year merely because he worked a single day in the previous year. While that might seem impractical, and even nonsensical, any absurdity is due solely to the method defendant chose to extend its benefits to its employees. As the Supreme Court noted in *Roberts*, "it is the employer, not the employee, who makes the offer, and who continues or discontinues it as he may find it to his interest." *Id.* at 412, 114 S.E. at 533. We dismiss defendant's third argument.

III.

[4]    Defendant next argues that the trial court erred in holding defendant liable to employees terminated after 31 December 1989 because they suffered no harm. We agree.

The old policy provided that: "Vacation time must be taken by the end of the appropriate calendar year or it will be lost. However, up to five [5] days of vacation time may be carried over to the following calendar year with the written approval of your supervisor and manager." The trial court found as fact that "[a]ny request by an employee to carry over the January 1, 1989 lump sum grant to 1990 would have been denied."

In its 21 December 1988 memorandum to employees regarding the change in vacation policy, defendant stated:

[E]ffective January 1 1990, and beyond, *vacation carryover will be eliminated.* Any rare exceptions must be approved by the Executive VP of your organization no later than November 1,

1989. It is the company's strong belief that your vacation time is an important benefit and must be taken on a current basis.

We believe that defendant's policies concerning the carryover of vacation days were valid and enforceable under the Act. Each policy was in place before the employees earned the vacation days thereby affected. *See Narron*, 75 N.C. App. at 583, 331 S.E.2d at 208. None of the plaintiffs who were still employed after 31 December 1989 had any vacation days to carry over to 1990, and thus suffered no loss when the defendant paid them only for the days they had accrued in the year of their termination. After 31 December 1989, employees forfeited the lump sum grant vacation days they had earned in 1988 under the old policy, and forfeited any unused days of vacation they had earned in 1989 under the new policy, unless they sought and obtained permission to carry those days over into 1990. We hold that the trial court erred in allowing any employees terminated after 31 December 1989 to recover for the lump sum grant under the old policy, and any unused days which were earned under the new policy, unless they sought and obtained permission to carry such days forward into the next year.

## IV.

**[5]** In its fifth argument, defendant argues that the trial court erred in making determinations of damages during the liability phase of the trial. We disagree.

Specifically, defendant takes exception to the trial court's determining: 1) which plaintiffs were entitled to recover damages; 2) what the damages formula was to be; 3) the rate of pay to be used in calculating damages; 4) the plaintiffs' right to recover liquidated damages; and 5) the amount of liquidated damages. Defendant cites no authority for its assertion that this constituted reversible error. Indeed, defendant offers no theory of how it was prejudiced by the court's consideration of those matters during the liability phase. Absent such an allegation, we can find no error in the trial court's consideration of those issues. Moreover, we believe that those matters were properly included in the liability phase as they all concern defendant's liability to the class and do not involve the defendant's liability to any particular plaintiff. Defendant's fifth argument is rejected.

## V.

**[6]** Next, defendant argues that the trial court erred in concluding that the plaintiffs were entitled to recover payment for their unused vacation days at their respective pay rates on the date of their termination. Instead, defendant asserts the measure should have been the plaintiffs' pay rates on 1 January 1989, which was the day they were to receive the vacation they had earned in 1988. We disagree.

As discussed previously, plaintiffs' causes of action accrued on their respective dates of termination. The injury they suffered was not the deprivation on 1 January 1989 of the vacation days, but the defendant's failure to pay them for those days upon their termination. Moreover, defendant's policy explicitly provided that vacation days would be paid "at the current base rate." The trial court did not err in calculating the plaintiffs' damages using their respective pay rates as of the date of termination.

## VI.

**[7]** Defendant's seventh argument also lacks merit. Defendant argues that the trial court erred in awarding damages to 1) any plaintiff not employed at least six months prior to 1 January 1989 and 2) class members who did not receive actual notice of the lawsuit.

The trial court found as fact that defendant's vacation policy "unconditionally promised an allotment of paid leave would be irrevocably granted on January 1 provided the employee had worked at least six months before that January 1." Defendant contends that the trial court then erroneously concluded that employees who had not met the proviso, *i.e.* employees less than six months prior to 1 January 1989, were entitled to recover.

While the trial court may have erred in drafting its finding of fact, we find no reversible error because the court achieved the correct result. The plain meaning of the policy is that an employee may not take the vacation until he has worked for six months: "If you are hired on or after August 1, you are eligible for ten (10) days of vacation *to be taken the following year after you have completed six (6) months of continuous service.*" The trial court refused to allow any employee who had worked less than six months to recover. Accordingly, we find that the trial court did not err in allowing employees who had commenced their employment within six months of 1 January 1989, but who had been employed by defendant for at least six months, to recover.

**[8]** Likewise, we believe that the trial court did not err in including employees who had not received actual notice of the action in the judgment. Defendant contends that those whose notices were returned undelivered should not have been included.

Although Rule 23(a) does not specifically address notice to the members of a class, N.C. Gen. Stat. § 1A-1, Rule 23(a) (1990), the North Carolina Supreme Court has held that fundamental fairness and due process require that adequate notice be given to the members of the class. *Crow v. Citicorp Acceptance Co.*, 319 N.C. 274, 283, 354 S.E.2d 459, 466 (1987). The Supreme Court has left the manner and the form of notice to the discretion of the trial court but has held that the court should require the best notice practical under the circumstances, including notice to all members who can be identified through reasonable efforts, although it need not comply with the formalities of service of process. *Id.* at 283-84, 354 S.E.2d at 466.

Considering the number of plaintiffs involved and the availability of the plaintiffs' addresses from the company file, in addition to the fact that it is the defendant who is disputing the notice, we conclude that notice was in accord with applicable class action law, providing for the best notice practical under the circumstances and being reasonably certain to inform those involved, *see Crow*, and affording each member the chance to opt out of the class. The form of notice chosen was not substantially less likely to bring home notice than any other feasible alternative, and therefore satisfies due process. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 94 L. Ed. 865 (1950). We conclude that it was not error for the trial court to include in its judgment those class members whose notices were returned undelivered.

## VII.

**[9]** The next two arguments concern the imposition by the trial court of liquidated damages against defendant. Defendant argues that the trial court erred in awarding such damages, and that the court erred in allowing plaintiffs to recover interest on those damages. We find no reversible error in the imposition itself, but reverse the award of interest on the liquidated damages.

N.C.G.S. § 95-25.22, which addresses the recovery of unpaid wages, provides that:

(a) Any employer who violates the provisions of . . . G.S. 95-25.6 through 95-25.12 (Wage Payment) shall be liable to the employee

or employees affected in the amount of . . . their unpaid amounts due under G.S. 95-25.6 through 92-25.12, as the case may be, plus interest at the legal rate set forth in G.S. 24-1, from the date each amount first came due.

(a1) In addition to the amounts awarded pursuant to subsection (a) of this section, the court *shall* award liquidated damages in an amount equal to the amount found to be due as provided in subsection (a) of this section, provided that if the employer shows to the satisfaction of the court that the act or omission constituting the violation was in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation of this Article, the court may, in its discretion, award no liquidated damages or may award any amount of liquidated damages not exceeding the amount found due as provided in subsection (a) of this section.

(Emphasis added).

Thus, the employer bears the burden of demonstrating that liquidated damages should not be imposed. However, even if an employer shows that it acted in good faith, and with the belief that its action did not constitute a violation of the Act, the trial court may still, in its discretion, award liquidated damages in any amount up to the amount due for unpaid wages. When the employer cannot make such a showing, the trial court has no discretion and must award liquidated damages.

Here, defendant argues that there was evidence to show that it changed the vacation policy solely for the purposes of accounting, and that the change was an utterly proper, prospective alteration to its benefits scheme, under *Narron*. This is, however, irrelevant. The trial court found that "defendant's failure to pay each plaintiff and class member (except those whose Wage and Hour claims are barred) a full year's lump sum grant of vacation upon their termination violated" the Act. As we have previously discussed, the act that constituted the violation was the failure to pay the plaintiffs for their vacation upon termination, not the change in policy. Defendant has pointed to no evidence to show that the failure to pay plaintiffs for their vacation days was done in good faith or in the belief that it was not a violation of the Act. Thus, N.C.G.S. § 95-22 mandated that the trial court award liquidated damages.

However, we do agree with defendant that the trial court erred in ordering it to pay interest on the liquidated damages. The trial court concluded that plaintiff class members were "entitled to an award of interest at the legal rate from the pay date next following termination, when these amounts came due, with such interest to be applied to both the unpaid wages and the liquidated damages."

Subsection (a) of N.C.G.S. § 95-25.22 provides that interest may be awarded on the amounts due under that subsection, which in this case is "all vacation time off or payment in lieu of time off in accordance with the company policy or practice." N.C.G.S. § 95-25.12. Liquidated damages, on the other hand, are provided for in subsection (a1). While section 95-25.22 states that interest may be recovered on the unpaid wages, it does not provide that interest is payable on liquidated damages. Liquidated damages are not part of the "amounts due" under subsection (a) and are, therefore, not to be subject to interest. We conclude that plaintiffs were not entitled to interest on the liquidated damages award.

## VIII.

[10] Next, defendant argues that the trial court erred in allowing attorneys' fees for non-prevailing parties, *i.e.* those plaintiffs who recovered on a common law contract claim but not under the Act. We disagree.

The parties have cited no North Carolina cases on the subject, and our research has disclosed none. However, federal courts have considered similar issues, and their reasoning, though not binding on us, is instructive. *See House v. Hillhaven, Inc.*, 105 N.C. App. 191, 412 S.E.2d 893, *disc. review denied*, 331 N.C. 284, 417 S.E.2d 251 (1992).

Defendant relies on the case *Hensley v. Eckerhart*, 461 U.S. 424, 76 L. Ed. 2d 40 (1983). In that case, the plaintiff class members had not won on all of their claims and the Supreme Court held that where the plaintiff class "has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee." *Id.* at 440, 76 L. Ed. 2d at 54-55. However, we believe that the case *Wooldridge v. Marlene Industries Corp.*, 898 F.2d 1169 (6th Cir. 1990), which relied upon *Hensley*, is more apt in this instance. In *Wooldridge*, the issue was whether attorneys' fees could be recovered for individual class members who did not prevail. The court held that the attorneys' fee award should be reduced by the time spent litigat-

ing those unsuccessful claims. The court was careful to state, however, that to the extent such time aided the claims of successful claimants, it was compensable. *Id.* at 1175.

In this instance, the attorneys' work was not divisible between the Wage and Hour claims and the contract claims. As discussed in part II, *supra*, the Wage and Hour claims and the contract claims were based upon the same fundamental legal theory: that the old vacation policy constituted an offer or inducement which plaintiffs accepted by working in 1988, thereby earning their 1989 vacation. Any class member who did not prevail on the Wage and Hour claim did so only because his action was barred by the statute of limitations. Because the claims were so similar, time spent litigating the contract claim directly benefitted those plaintiffs whose Wage and Hour claims were not time-barred. Thus, we conclude that the trial court did not err in refusing to reduce the attorneys' fee award to account for those class members who prevailed only on the contract claim.

## IX.

[11] Finally defendant argues that the trial court erred in compelling discovery when there was no outstanding discovery request. We agree.

On 27 July, 1993, the trial court ordered:

[P]laintiffs are entitled to obtain through discovery the names, addresses, social security numbers, service dates, termination dates and rates of pay at termination for all persons whose employment with the defendant terminated after July 31 1992. The defendant shall provide to plaintiffs' attorneys such information regarding persons terminated from August 1, 1992, through July 1, 1993, within 15 days of the date of this Order, and thereafter shall continue to provide the plaintiffs' attorneys, on a monthly basis, such information on additional persons whose employment with the defendant is terminated, until further order of the Court.

If "a party fails to answer an interrogatory submitted under Rule 33 . . . the discovering party may move for an order compelling an answer." N.C.G.S. § 1A-1, Rule 37. On 8 May 1992, plaintiffs sent an interrogatory to defendant seeking information on all the members of the class "as it was defined in the order." The request was a continuing one, so that defendant was obligated to provide information as it became available until the date of trial. However, plaintiffs do not

contend that defendant failed to provide any information concerning members of the class as it was defined in the 18 November 1991 order. Therefore, so long as the class continued to be defined as it was in the 18 November 1991 order, there were no unsatisfied discovery requests. The trial court erred in ordering defendant to produce the information.

### Plaintiffs' Appeal

[12] Relying on two assignments of error, plaintiffs argue that the trial court adopted an erroneous measure of damages by failing to order defendant to pay its former employees the vacation leave pay promised under both the old and the new policies. With respect to employees terminated prior to 1 January 1990, we agree.

As stated previously, the trial court properly concluded as a matter of law that the old policy constituted a unilateral and unconditional promise to the employees that, upon acceptance by the employees by the commencing of service with the company, became an irrevocable promise.

The court, however, allowed each plaintiff to recover only for the vacation allotment he was to have earned under the old policy. This was error. The court apparently confused the time when vacation was earned with the time in which it could be used. By working in 1988, plaintiffs earned an allotment of vacation that could only be taken in 1989. Under the new policy, plaintiffs earned vacation days that could be taken in that year. The two allotments were separate awards for separate periods of work, performed pursuant to two separate contracts.

Any plaintiffs who were terminated prior to 1 January 1990 were entitled to receive their full allotment of vacation under the old policy in addition to any days they had earned under the new policy prior to termination. *See Narron; Mays Mills.* The trial court erred in deducting the vacation earned in the year of termination from the lump sum grant.

In summary, we reverse the trial court's entry of judgment in favor of any plaintiffs terminated after 31 December 1989, reverse its award of interest on the liquidated damages portion of the award, reverse its order compelling defendant to produce information concerning employees terminated after 31 July 1992, and reverse its deci-

sion to deduct the vacation plaintiffs earned in the year of their termination from the lump sum grant. We affirm the balance of the trial court's actions and remand the case.

Affirmed in part, reversed in part.

Judges GREENE and JOHN concur.