HENRY J. MURPHY, PLAINTIFF-APPELLEE v. COASTAL PHYSICIAN GROUP, INC., DEFENDANT-APPELLANT

No. COA99-925

(Filed 1 August 2000)

## Appeal and Error— appealability—interlocutory order—no substantial right

Defendant-employer's appeal from the trial court's grant of partial summary judgment in favor of plaintiff-employee as to each of defendant's counterclaims for breach of contract, breach of fiduciary duty, negligence, and wrongful attachment, is dismissed since: (1) it is an interlocutory order that does not address the claims in plaintiff's complaint regarding defendant's alleged

consummation of a transaction with another company entitling plaintiff to a transaction fee under the employment agreement; (2) there are no overlapping factual issues; (3) the order has not been certified by the trial court; and (4) the order does not affect a substantial right.

Judge GREENE dissenting.

Appeal by defendant from order entered 7 April 1999 by Judge E. Lynn Johnson in Durham County Superior Court. Heard in the Court of Appeals 25 April 2000.

*Kilpatrick Stockton LLP, by W. Mark Conger, for plaintiff-appellee.*

*Moore & Van Allen, by Andrew B. Cohen, for defendant-appellant.*

McGEE, Judge.

Henry J. Murphy (Murphy) worked with the international accounting firm of Arthur Anderson LLP for thirty-six years, including twenty-four years as a partner, before he retired in March 1996. At the time Murphy retired, he was the partner in charge of corporate recovery, primarily working with bankrupt and otherwise insolvent or distressed corporations. Between 1995 and 1996, Coastal Physician Group, Inc. (Coastal) lost approximately $258.3 million in revenues according to Murphy, and Coastal's board of directors (the board) sought Murphy's guidance. Murphy accepted a position on Coastal's board of directors in October 1996. Less than one month later, Murphy was asked to join Coastal as its interim president and chief executive officer (CEO), which he accepted.

Murphy and his attorney negotiated a fourteen-page employment agreement (the agreement) with Coastal's board of directors. The agreement, made effective on 1 November 1996, provided for an initial term of employment ending on 28 February 1997, which could be renewed. The agreement provided that Murphy "shall manage and operate Company as President and Chief Executive Officer pursuant to the By-Laws of Company and in accordance with the contractual obligations of Company as they existed on the Employment Date." More specific duties were to select and employ senior management and professionals, furnish information to the board, and search for a permanent CEO. Murphy's compensation was to be a $30,000 monthly

salary during the initial term, a $100,000 signing bonus, and a choice between either stock appreciation rights or any applicable fee bonus. A subparagraph defining a possible "Transaction Fee" payable to Murphy provides that

> [i]n the event Company consummates a Transaction (as herein defined) during the term of this Agreement or within six (6) months from the date of termination of this Agreement . . . Company shall pay, or cause to be paid, to Executive, at the time the Transaction is consummated, a payment equal to one-half of one percent (0.5%) of the fair market value of the acquisition price paid by the acquiring entity or entities in connection with the Transaction. As used herein, "Transaction" means any one or more transactions or series of transactions which are conditioned on each other or which occur or are planned or are committed to occur at substantially the same time and which, taken together result in either (i) merger or consolidation where Company is not the consolidated or surviving company or where the shareholders of Company prior to the merger or consolidation do not own a majority of the shares of the consolidated or merged company, (ii) a transfer of over fifty percent (50%) of the assets of Company, or (iii) a transfer or issuance of over fifty percent (50%) of the Common Stock of Company.

Murphy filed a verified complaint against Coastal on 30 July 1997. Murphy contends that during his tenure as president and CEO he "was continually involved in negotiating the restructure of Coastal's debt with the company's existing bank lending institutions, and negotiating potential transactions between various financing sources and Coastal." He further contends that the board authorized him "to be involved on an on-going basis in marketing Coastal's business assets for sale[,]" whereby Murphy "pursued practical and available avenues for restructuring, refinancing, selling or otherwise improving the cash flow position and resolving the cash flow crisis then existing at Coastal."

Murphy alleges that during April, May and June 1997, Coastal "consummated a transaction" with National Century Financial Enterprises, Inc. (National) in which National purchased all of Coastal's accounts receivable for an acquisition price of $151 million. The alleged transaction between Coastal and National occurred within six months of the agreement expiration date of 28 February 1997 and constituted "significantly more than fifty percent of Coastal's assets" according to Murphy, thereby entitling him to a

transaction fee of $755,000. On 25 April 1997, Murphy gave notice to Coastal of his election to receive the transaction fee. Coastal did not respond. Coastal denies that it sold $151 million of accounts receivable at the time of the transaction with National, or that the amount actually sold constituted fifty percent of its assets.

Along with his verified complaint, Murphy also filed a motion for attachment of funds in a bank account held by Coastal in an amount of $755,000. The trial court signed an order of attachment on 17 June 1997, but dissolved the attachment on 30 July 1997 upon motion by Coastal. On 31 July 1997, Coastal filed an amended answer and counterclaims asserting breach of contract, breach of fiduciary duty, negligence and wrongful attachment. The trial court granted partial summary judgment in favor of Murphy as to each of Coastal's counterclaims on 7 April 1999. Coastal appeals.

Murphy filed a motion to dismiss Coastal's appeal as interlocutory on 25 August 1999, and Coastal filed a responsive motion on 22 December 1999. "An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy." *Veazey v. Durham*, 231 N.C. 357, 362, 57 S.E.2d 377, 381, *reh'g denied*, 232 N.C. 744, 59 S.E.2d 429 (1950). Because the trial court's order dismissed Coastal's counterclaims against Murphy but did not address the claims in Murphy's complaint, the order is interlocutory.

Generally, there is no right of immediate appeal from an interlocutory order. N.C. Gen. Stat. § 1A-1, Rule 54(b) (1990); *see also Veazey*, 231 N.C. at 362, 57 S.E.2d at 381. The reason for this rule is "to prevent fragmentary, premature and unnecessary appeals" by permitting the trial court to bring the case to final judgment before it is presented to the appellate courts. *Waters v. Personnel, Inc.*, 294 N.C. 200, 207, 240 S.E.2d 338, 343 (1978). Indeed, "[t]here is no more effective way to procrastinate the administration of justice than that of bringing cases to an appellate court piecemeal through the medium of successive appeals from intermediate orders." *Veazey*, 231 N.C. at 363, 57 S.E.2d at 382.

There are two circumstances, however, in which a party may appeal an interlocutory order. *Davidson v. Knauff Ins. Agency*, 93 N.C. App. 20, 24, 376 S.E.2d 488, 490, *disc. review denied*, 324 N.C. 577, 381 S.E.2d 772 (1989). The first requires certification by the trial judge that there is not just reason to delay the appeal. N.C.R. Civ. P.

54(b). The second is where the order appealed from (1) affects a substantial right, (2) in effect determines the action and prevents a judgment from which appeal might be taken, (3) discontinues the action, or (4) grants or denies a new trial. N.C. Gen. Stat. §§ 1-277 (1996) and 7A-27(d) (1995). Coastal argues in favor of the latter exception, specifically that the trial court's order deprives Coastal of a substantial right. The substantial right must be lost, prejudiced, or less than adequately protected absent immediate review. *See J & B Slurry Seal Co. v. Mid-South Aviation, Inc.*, 88 N.C. App. 1, 6-9, 362 S.E.2d 812, 816-17 (1987) (providing thorough discussion emphasizing this condition and noting cases that erroneously omitted it).

Our Courts have found a substantial right would be lost absent immediate review when the dismissed claims and the remaining claims are dependent upon the same set of facts or have "overlapping factual issues," *Davidson*, 93 N.C. App. at 26, 376 S.E.2d at 492. If the appellant is not allowed to appeal the dismissal of a claim until after trial, and that dismissal is then found to have been in error, then the appellant could assert the claim again in a separate action. *See Green v. Duke Power Co.*, 305 N.C. 603, 608, 290 S.E.2d 593, 596 (1982). This would allow the appellant to potentially obtain a judicial result different from that obtained on the claims tried in the prior case, which shared the same factual issues, and this would be unfair to the other party. *See id.* By this reasoning, Coastal claims the issues in its counterclaims factually overlap the issues in Murphy's complaint, creating a substantial right that might be lost if Coastal is not allowed to immediately appeal the dismissal of its counterclaims.

The claim in Murphy's complaint is that Coastal consummated a transaction with National in an amount and at a time that entitled Murphy to a transaction fee pursuant to the clear provisions of the employment agreement. *See McDowell v. McDowell*, 61 N.C. App. 700, 705, 301 S.E.2d 729, 732 (1983) (as a party consents to bind itself, so shall it be bound). In order to prevail on this claim, Murphy must prove that a transaction occurred within six months of the day his employment ended, and that the transaction resulted in the transfer of more than fifty percent of Coastal's assets. The performance of his duties as an employee is irrelevant.

Coastal's counterclaims are that Murphy wrongfully attached funds belonging to Coastal and during his employment acted in such a way as to make him liable for negligence, breach of contract, and breach of fiduciary duty. To prove wrongful attachment, Coastal must demonstrate among other facts, that Murphy did not have probable

cause to believe he had grounds for attaching Coastal's property and did so maliciously. *See Brown v. Estates Corp.*, 239 N.C. 595, 601, 80 S.E.2d 645, 650-51 (1954). To prevail on its claim for negligence, Coastal must prove Murphy breached a legal duty to Coastal which proximately caused injury. *See Goodman v. Wenco Foods, Inc.*, 333 N.C. 1, 18, 423 S.E.2d 444, 452 (1992). As for breach of contract, Coastal must show Murphy failed to perform duties assigned to him under the employment agreement. *See Gore v. Ball, Inc.*, 279 N.C. 192, 199, 182 S.E.2d 389, 393 (1971). Finally, Coastal must prove Murphy failed to act in the best interest of Coastal during his employment in order to prove a breach of fiduciary duty. *See Bumgarner v. Tomblin*, 92 N.C. App. 571, 576, 375 S.E.2d 520, 523, *disc. review denied*, 324 N.C. 333, 378 S.E.2d 789 (1989).

In Coastal's responsive motion, it proffers seven "overlapping factual issues," *see Davidson*, 93 N.C. App. at 26, 376 S.E.2d 488 at 492, in its counterclaims and Murphy's claims: (1) issues arising out of Murphy's employment contract, (2) the parties' performance of their respective obligations under that contract, (3) the consummation of the National financing transaction, (4) the intention of the parties when entering into the employment agreement, (5) the extent to which the parties satisfied their contractual obligations, (6) Murphy's claim that he is entitled to a transaction fee, and (7) Coastal's claim that Murphy breached his contractual, fiduciary and common law obligations. Reviewing Murphy's claim for a transaction fee and Coastal's counterclaims, we find none of these issues to be dependent on the same set of facts or to have "overlapping factual issues."

The first "overlapping factual issue" argued by Coastal does not identify any certain issue but rather the source of several issues. The second is relevant only to Coastal's counterclaims, and the third is relevant only to Murphy's claim. The fourth is irrelevant to Murphy's claim because the transaction fee language in the agreement is not ambiguous. *See, e.g., Grocery Co. v. R.R.*, 215 N.C. 223, 225, 1 S.E.2d 535, 536 (1938) (where terms of contract are unambiguous, its meaning must be determined from the writing itself). The fifth issue is a restatement of the second, the sixth is relevant only to Murphy's claim, and the seventh is relevant only to Coastal's counterclaims.

Nevertheless, Coastal argues that *Narron v. Hardee's Food Systems, Inc.*, 75 N.C. App. 579, 331 S.E.2d 205, *disc. review denied*, 314 N.C. 542, 335 S.E.2d 316 (1985) is "most analogous" to the case before us and controls the determination of this case. In *Narron*, the defendant employer discovered that $3,500 was missing from the

restaurant that was managed by the plaintiff, who was suspended for more than six months and then discharged for cause. The plaintiff had accumulated vacation pay under a personnel policy that did not expressly state he forfeited such pay upon discharge, as required by the Wage and Hour Act, to enforce such forfeiture. The policy, however, was discontinued during the month plaintiff was discharged and was replaced by a policy expressly stating that termination for cause would result in forfeiture of unused vacation pay. *Narron*, 75 N.C. App. at 582, 331 S.E.2d at 207. The plaintiff sued for his unused vacation pay under the Wage and Hour Act.

In its answer, the defendant argued it had complied with the Act, and then asserted a counterclaim for wrongful conversion of company funds or the negligent loss of such funds. The trial court entered summary judgment in favor of the defendant on the plaintiff's claim and stated in its order that the remaining counterclaim was unaffected by such ruling. The plaintiff appealed from the interlocutory summary judgment order, which our Court did not dismiss because "a 'substantial right' of the plaintiff [was] affected[.]" *Narron*, 75 N.C. App. at 581, 331 S.E.2d at 206 (citing *Nasco Equipment Co. v. Mason*, 291 N.C. 145, 229 S.E.2d 278 (1976)). Our Court held that the trial court had erred in granting summary judgment because a genuine issue of material fact existed as to whether the plaintiff was due vacation pay earned under the earlier policy. *Id.* at 583, 331 S.E.2d at 208.

Not only are there important factual distinctions between the present case and *Narron*, but also, without any discussion, *Narron* cited for support *Nasco Equipment Co. v. Mason*, 291 N.C. 145, 229 S.E.2d 278 (1976), which "apparently merged two separate grounds for appealing interlocutory orders" in stating that the summary judgment order " '*in effect, determine[d] the claim* [and] *thus* affect[ed] a substantial right[.]' " *J & B Slurry*, 88 N.C. App. at 8, 362 S.E.2d at 816-17 (emphasis in original) (disapproving of the merging of independent grounds for appeal under G.S. §§ 1-277(a) and 7A-27(d)). This suggests the *Narron* Court heard the appeal on the ground that the summary judgment in effect determined the plaintiff's claim, but used the term "substantial right" to describe that separate ground.

Second, and more significant, the *Nasco* Court relied on the case of *Oestreicher v. Stores*, 290 N.C. 118, 225 S.E.2d 797 (1976). The *Oestreicher* Court determined that regardless of the nature of the issues involved, a plaintiff had a substantial right to have all his causes against the same defendant tried at the same time by the same

judge and jury. *See Oestreicher,* 290 N.C. at 130, 225 S.E.2d at 805; *see also Moose v. Nissan of Statesville,* 115 N.C. App. 423, 426, 444 S.E.2d 694, 696 (1994) (analyzing *Oestreicher*). However, two years later in *Waters,* 294 N.C. at 207, 240 S.E.2d at 343, our Supreme Court repeated the requirement that the right in question would be lost absent immediate review. *See also Moose,* 115 N.C. App. at 426-27, 444 S.E.2d at 697. The Court then rejected an appealability argument based solely on the *Oestreicher* right to determine all claims in the same proceeding, *see Green,* 305 N.C. at 606, 290 S.E.2d at 595, and reaffirmed that decision in *Bernick v. Jurden,* 306 N.C. 435, 439, 293 S.E.2d 405, 408-09 (1982). *See J & B Slurry,* 88 N.C. App. at 6-7, 362 S.E.2d at 816 (analyzing the cases).

Our Court in *J & B Slurry* recognized an "apparent doctrinal inconsistency concerning the requirements for appealing interlocutory orders [which] may produce irreconcilable results in cases which . . . include counterclaims." *Id.* at 8, 362 S.E.2d at 817. We added that "the *Oestreicher/Nasco* and *Green/Bernick* lines of authority produce opposite results" and decided to "adopt the latter decisions' longer established, and more recently affirmed, rationale[.]" *Id.* at 8-9, 362 S.E.2d at 817. Later in *Moose,* our Court stated that "it is time to establish the requirements contained in *Green* as controlling in its redefining of *Oestreicher* [and its progeny]." *Moose,* 115 N.C. App. at 427, 444 S.E.2d at 697. Therefore, we reject Coastal's argument relying on *Narron.*

Rather, we find support for our Court's determination in the present case in *T'ai Co. v. Market Square Limited Partnership,* 92 N.C. App. 234, 373 S.E.2d 885 (1988), a case cited by Murphy in his motion. In *T'ai,* the plaintiff sued the defendants for compensatory and punitive damages alleging breach of contract, wrongful interference with contract, fraud, conversion and unfair trade practices. The defendants who answered denied these claims and counterclaimed for attorney's fees, alleging the plaintiff's claims were frivolous, malicious and without merit. *T'ai,* 92 N.C. App. at 234, 373 S.E.2d at 885-86. They also moved for summary judgment, which the trial court granted. The plaintiff appealed, and our Court held that the order granting summary judgment for the defendants was not appealable before the counterclaim for attorney's fees had been adjudicated by the trial court. *Id.* at 236-37, 373 S.E.2d at 886-87 (relying on *Green, Bernick* and *J & B Slurry*).

Our sole question in *T'ai* was whether the interlocutory order affected a substantial right, for we said clearly it did not "[i]n effect

determine[] the action[,]" or satisfy any other statutory ground under N.C. Gen. Stat. § 7A-27(d) (1986). *Id.* at 235, 373 S.E.2d at 886. *Compare Nasco,* 291 N.C. at 148, 229 S.E.2d at 281 (improperly blending these two concepts). Our Court then noted that the substantial right "most often addressed is the right to avoid two separate trials on the same issues." *T'ai,* 92 N.C. App. at 236, 373 S.E.2d at 886. " '[T]here is ordinarily no possibility of inconsistent verdicts or other lasting prejudice where trial of defendant's counterclaim before appeal will not determine any issues controlling the potential trial of plaintiff's claims after appeal.' " *Id.* (citation omitted). By analogy to *T'ai,* in which the plaintiff could not appeal the order of summary judgment until adjudication of the defendants' counterclaims, in this case Coastal may not appeal the order of partial summary judgment against its counterclaims until adjudication of Murphy's cause of action.

We find no overlapping factual issues between Murphy's complaint and Coastal's counterclaims, and we do not believe the order appealed from deprives Coastal of a substantial right which would be jeopardized absent a review prior to a final determination on the merits. The trial court's order for partial summary judgment in favor of Murphy as to Coastal's four counterclaims is not excepted from the general rule that an interlocutory order is not immediately appealable, and therefore we grant Murphy's motion to dismiss Coastal's appeal.

Dismissed.

Judge EDMUNDS concurs.

Judge GREENE dissents.

Judge GREENE dissenting.

The law with respect to whether an interlocutory appeal affects a substantial right is best summarily stated as follows: "so long as a claim has been finally determined, delaying the appeal of that final determination will ordinarily affect a substantial right *if* there are overlapping factual issues between the claim determined and any claims which have not yet been determined." *Davidson v. Knauff Ins. Agency,* 93 N.C. App. 20, 26, 376 S.E.2d 488, 492, *disc. review denied,* 324 N.C. 577, 381 S.E.2d 772 (1989).

In this case, the summary judgment finally determined Coastal's counterclaims. I also believe the complaint and counterclaims present "overlapping factual issues" in that the claims all revolve around the construction and performance of the 1 November 1996 "EMPLOY-MENT AGREEMENT" (the Agreement). For example, the complaint sought and Murphy received an attachment of certain proceeds pursuant to the Agreement;[1] whereas Coastal's answer asserts a counterclaim alleging the attachment of those proceeds was wrongful.

Accordingly, Coastal's current appeal of the trial court's order granting Murphy's summary judgment motions, although interlocutory, affects a substantial right. I, therefore, would allow the appeal.

---

1. This order of attachment was subsequently dissolved.