Plaintiff J. J. Johnson boarded the defendant's train on 10 July, 1920, at Bowden, N.C. en route to Norfolk, Va., having purchased a ticket at Bowden to Rocky Mount. He was ejected from the train by the conductor at Dudley, N.C. for failure to produce his ticket. The jury found that the ejection was wrongful, and answered the issue as to compensatory damages $1,000.
Exceptions 1, 2, 3, 4, 5, 6, 7, 8, and 9 are taken to the admission of certain evidence showing that the plaintiff had a logging contract with the Rowland Lumber Company, that he had an appointment to meet certain laborers in Norfolk, Va., and bring them to Bowden, N.C. to be hired by him for the purpose of performing the said logging contract, and that he was en route to Norfolk when he was ejected from the train of the defendant. That his contract depended upon the services of these laborers, and if he failed to keep the work going he would lose his job. That on account of being ejected from the train he missed his appointment, lost his men, and his contract with said lumber company was canceled.
The court submitted two issues to the jury, which were answered as follows:
"1. Did the defendant wrongfully eject the plaintiff from its train, as alleged in the complaint? Answer: `Yes.'
"If so, what damage, if any, has the plaintiff sustained thereby? Answer: `$1,000.'"
The court charged the jury as to certain elements of damage, such as humiliation, mental anguish, bodily pain, the loss of time and money, and then gave the following instruction: "And in addition to that, he was a man who had a contract on which he was making $300 a week clear profit by carrying men over to the Rowland Lumber Company and logging and digging railroads for them; that he had an engagement in the city of Norfolk that night and left Bowden intending to go there and fill that engagement and get those men and carry them back so he could continue to make $300 a week, and by reason of the fact that he was wrongfully ejected from this train, he was caused to lose a good deal of time, which made him lose this engagement in Norfolk, and by so doing these men were scattered and he couldn't round them up, and that fact caused him to lose his contract with the Rowland Lumber Company, and he lost a great deal of money, loss of profit and time and *Page 103 
money, all as he contends, naturally and reasonably and properly flowing from the wrongful conduct of defendant towards him, and that when you sum up all these elements of damages that he is entitled to — compensatory damages — that you ought to find some large amount, around $3,000." And again, in that connection, the court gave the following charge to the jury: "As to this issue of damages, the court charges you that if the plaintiff has satisfied you by the evidence, and by its greater weight, that he is entitled to damages, he is entitled to recover as actual or compensatory damages a fair and just compensation for all loss that he has sustained that naturally flows from the wrongful conduct, if you find from the evidence, and the greater weight thereof, that the same was caused wrongfully by the defendant towards him. This would include loss of time and personal inconvenience, if any, and any financial and pecuniary loss, if any. If you find from the evidence, and by its greater weight, that the conduct of the defendant was wrongful in ejecting him from the train, you will answer this issue whatever amount you are satisfied from the evidence, and by its greater weight, that the plaintiff had sustained according to that measure of damages, if you find he is entitled to recover at all. It is a question of fact for you. The court has no opinion of its own as to what your answer will be. The court has merely stated the contentions of the plaintiff and the defendant and the evidence bearing on the contentions."
Exceptions were duly taken to these instructions. Judgment upon the verdict, and defendant appealed.
After stating the material facts: We are of the opinion that the learned judge erred in the instructions to the jury which are above stated.
The question as to the measure of damages, in cases of this kind, has been much discussed by this Court in several cases, and the law thoroughly settled.
The Court said in Lee v. R. R., 136 N.C. 533, 535: "It is immaterial whether we treat the cause of action as for a breach of contract or for a negligent omission to perform a public duty arising out of a contract of carriage. The damages in either case are confined to such as were reasonably within the contemplation of the parties when the contract was made by which the duty to the plaintiffs was assumed." Whether this is strictly accurate where the action is one for the tort, in respect to the time when the damages should be in contemplation of the parties, that is, whether at the time of the commission of the tort, or at the time the *Page 104 
contract of carriage was entered into, we will not now inquire, for it will suffice for our purpose in this case if we assume that it is the time when the tort was committed, and in the case where the action is in contract, at the time of making the contract, for we think that in either case the failure to employ the laborers at Norfolk, and the subsequent loss of plaintiff's contract with the Rowland Lumber Company, should not have been considered in assessing the damages.
It is said in Penn v. Tel. Co., 159 N.C. at pp. 310 and 311: "In so far as mental anguish is concerned, except in cases where punitive damages are sought and allowable, and except as to the time when the relevant circumstances are to be noted and considered, the amount is very much the same whether the recovery is had in contract or in tort. In the one case those damages are allowed which were in the reasonable contemplation of the parties when the contract was made, and in the other the consequential losses resulting from the tort, and which were natural and probable at the time the tort was committed. Hale on Damages, p. 48. Speaking to these principles, and their practical application, in Scott and Jarnagan's `Law of Telegraphs,' it is said: `But when the contract between the parties does not show they had in contemplation this wider range in the estimate of damages (in contract), the measure of damages seems to be substantially the same in either kind of action. The true rule of estimating damages in actions ex contractu may be stated thus: The defendant is liable only for damages as may fairly and substantially be considered as arising naturally,i. e., according to the usual course of things, from the breach of the contract, or — and here is where the measure of damages takes a wider range — for whatever damages may fairly be supposed to have been within the contemplation of the parties. The rule in actions ex delicto is that the damages to be recovered must be the natural and proximate consequence of the act complained of. This is the rule when no malice, fraud, oppression, or evil intent intervenes. The damages which may be considered as arising naturally, according to the usual course of things, from the breach of the contract, are substantially the same as damages which are the natural and proximate consequences of the wrong complained of." "There is one principal difference in the element of damages obtaining in breach of contract and consequential damages arising from a tort. In the one case damages are recovered, as a rule, on relevant facts in the reasonable contemplation of the parties at the time the contract is made, and in the other on the facts existent, or as they reasonably appeared to the parties at the time of the tort committed." Peanut Co. v. R. R.,155 N.C. 152.
And the present Chief Justice says, in Kennon v. Tel. Co., 126 N.C. 232: "It is immaterial under our system of practice whether the action *Page 105 
is in tort for the negligence in the discharge of a public duty or for breach of contract for prompt delivery, for the recovery in either case is compensation for the injury done the plaintiff, and which was reasonably in contemplation of the parties as the natural result of the breach of the contract or default in discharging the duty undertaken." See, also, Foardv. R. R., 53 N.C. 235; Sharpe v. R. R., 130 N.C. 613; Newsome v. Tel.Co., 153 N.C. 153. Damages are measured, in matters of this kind, not only by the well known rule laid down in Hadley v. Baxendale, 9 Exch., 341, but they must not be the remote, but the proximate consequence of a breach of contract, or the wrong, and must not be speculative or contingent. Byrdv. Express Co., 139 N.C. 273. It is an elementary principle that all damages must flow directly and naturally from the wrong, and that they must be certain both in their nature and in respect to the cause from which they proceed. Shearman and Redfield on Neg., secs. 25, 26. Damages which are uncertain and speculative, or which are not the natural and probable result of the breach, are too remote to be recoverable. 2 Joyce, sec. 1284. It is universally held that damages are not to be based upon mere conjectural probability of future loss or gain. 8 A. E., 610, and cases cited. Something more than a possible result must appear. Newsome v. Tel. Co.,supra. It is stated in 5 Ruling Case Law, at sec. 773, p. 148, that a loss of profits which an ejected passenger might have made in carrying out a contract that he abandoned because partly disabled by his injuries, but which loss is not the natural and proximate result of the ejection, does not constitute an element of recoverable damages. And damages resulting to an ejected passenger from his loss of work, by reason of his delay at the station at which he was compelled to leave the train, are too remote to be considered, citing Wells v. Boston M. R. Co., 82 Vt. 108; Carsten v.Northern Pac. R. Co., 44 Minn. 454. See, also, Tillinghast v. CottonMills, 143 N.C. 268; Hardware Co. v. Buggy Co., 167 N.C. 423; Gardnerv. Tel. Co., 171 N.C. 405; Sledge v. Reid, 73 N.C. 440; and in Bridgersv. Dill, 97 N.C. 222, where the distinction between direct and proximate damages and secondary or consequential damages is well stated and aptly illustrated by reference to Sledge v. Reid, supra. In that case (Sledge v.Reid, supra), which was an action to recover damages for the killing of two mules, it was held that the proximate damage to the plaintiff was the loss of the mules, and his failure to make a crop was the secondary consequence, resulting from the wrong, and was too remote and uncertain; but in this case the injury to the crop was the direct and proximate damage resulting from the wrong of the defendants in repeatedly pulling down the fence and exposing the crop to the prey of cattle. It is well established that, in a "pure tort," the wrongdoer is responsible for all damages directly caused by *Page 106 
his misconduct, and for all indirect or consequential damages which are the natural and probable effect of the wrong, under the facts as they exist at the time the same is committed, and which can be ascertained with a reasonable degree of certainty. Johnson v. R. R., 140 N.C. 574; Sharpe v.Powell, 7 L. R., 1892, p. 253; 8 A. E., p. 598; Hale on Damages, 34, 35et seq. This last author, in substance, says that a wrongdoer is liable for all damages which are the proximate effect of his wrong, and not for those which are remote; "that direct losses are necessarily proximate, and compensation therefor is always recoverable; that consequential losses are proximate when the natural and probable effect of the wrong." A well recognized restriction, applying in cases of tort and contract, and as to both elements of damages, is to the effect that the injured party must do what he can in the exercise of reasonable care and diligence to avoid or lessen the consequences of the wrong, and for any part of the loss incident to such failure no recovery can be had. This limitation was approved by us in a case of contract, in Tillinghast v. Cotton Mills, 143 N.C. 268, and directly applied to a case of tort, in R. R. v. Hardware Co., 143 N.C. 54.Bowen v. King, 146 N.C. at pp. 385 and 390.
But how can it be said that indirect or consequential damages for the commission of a tort, if founded upon a contract, are the natural and probable effect of the wrong, under the facts as they exist at the time the same is committed, if they are such as are not known to the wrongdoer, and could not be contemplated by him? In such a case, he cannot be said to have intended a result as the one flowing naturally or consequentially from his wrongful act, of which he was totally ignorant. Therefore it is that, in such cases, the law does not charge him with such damages, but only with those which the parties contemplated as likely or probably would be caused by a breach of the contract of carriage, by requiring the plaintiff to leave the car, for this substantially is the tort or wrong complained of. The liability of the defendant would be stretched entirely too far, and much beyond what justice and the necessities of the case require, if damages, which would be greatly out of proportion to the injury wrought by the unlawful act, could thus be exacted. Responsibility for damages which would include his failure to realize the benefit of every contract or business transaction of the passenger thus ejected from a train would render transportation of passengers too hazardous and destructive in character to be undertaken by any prudent persons or association of them.
It was said in Squire v. Telegraph Co., 98 Mass. 277 (93 Am. Dec., 157), in commenting upon and approving the rule formulated in 1854 by BaronAlderson, for the Court, in Hadley v. Baxendale, 9 Exch., 341: "A rule of damages which should embrace within its scope all the *Page 107 
consequences which might be shown to have resulted from a failure or omission to perform a stipulated duty or service, would be a serious hindrance to the operations of commerce, and to the transaction of the common business of life. The effect would be to impose a liability wholly disproportionate to the nature of the act or service which a party has bound himself to perform, and to the compensation paid and received therefor." This language of the Court in 98 Mass. 277, was approved by us in Williams v. Tel. Co., 136 N.C. 82. The rule of damages, as framed for the Court by Baron Alderson, in Hadley v. Baxendale, and generally adopted by the courts since that time, may well be repeated here with the learned Baron's comments thereon, and the reasons in support of the rule, as the latter bear directly upon the particular question we have been discussing: "Now we think the proper rule in such a case as the present is this: Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered either arising naturally, i. e., according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it. Now, if the special circumstances under which the contract was actually made were communicated by the plaintiffs to the defendants, and thus known by both parties, the damages resulting from the breach of such a contract, which they would reasonably contemplate, would be the amount of injury which would ordinarily follow from a breach of contract under these special circumstances so known and communicated. But, on the other hand, if these special circumstances were wholly unknown to the party breaking the contract, he, at the most, could only be supposed to have had in his contemplation the amount of injury which would arise generally, and in a great multitude of cases not affected by any special circumstances, from such a breach of contract. For, had the special circumstances been known, the parties might have specially provided for the breach of contract by special terms as to the damages in that case; and of this advantage it would be very unjust to deprive them."
Now, can it be said that damages arising from plaintiff's failure to meet the men at Norfolk, or the loss of plaintiff's employment by the lumber company, can both, or either, "be fairly and reasonably" considered either as arising naturally, i. e., according to the usual course of things, from the carrier's breach of contract, or his tort, by whichever name it may be called, or such as may reasonably be supposed to have been in contemplation of both parties at the time the contract of carriage was made, or at the time of the breach or tort complained of by the *Page 108 
plaintiff? Such a loss, or such damages as are now claimed, would not ordinarily nor naturally and probably flow from the wrongful act of the carrier in refusing to transport the plaintiff beyond the place where he left the train. The justice and wisdom of the rule, both in cases of contracts and of torts growing out of contracts, is apparent, and for this reason we have approved and applied it generally to cases such as the one we now have before us. Ashe v. DeRosset, 50 N.C. 299; 72 Am. Dec., 552; Spencer v. Hamilton, 113 N.C. 49; 37 Am. St. Rep., 611;Herring v. Armwood, 130 N.C. 177; 57 L.R.A., 958. It has been applied, as we have seen, in actions against telegraph companies for negligence in transmitting and delivering messages. Tel. Co. v. Hall, 124 U.S. 444;Cannon v. Tel. Co., 100 N.C. 300; Kennon v. Tel. Co., 126 N.C. 232. And the same has been done in other jurisdictions. Mackay v. Telegraph Co.,16 Nev. 222; Frazer v. Telegraph Co., 84 Ala. 487; Baldwin v. TelegraphCo., 45 N.Y., 744; 6 Am. Rep., 165; Telegraph Co. v. Gildersleeve,29 Md. 232;
96 Am.Dec., 519; Landsberger v. Telegraph Co., 32 Barb., 530; Candee v.Telegraph Co., 34 Wis. 471; 17 Am. Rep., 452; Beaupre v. Telegraph Co.,21 Minn. 155.
The other exceptions require no separate consideration or discussion at this time. The alleged errors may not occur again.
New trial.