IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-128

Filed 7 May 2025

Wake County, No. 09CVS6367

LLOYD G. BROWN, et al., Plaintiffs,

v.

NORTH CAROLINA DEPARTMENT OF ENVIRONMENTAL QUALITY, an agency
of The State of North Carolina, et al., Defendants.

Appeal by defendant from judgment entered 23 November 2022 by Judge

G. Bryan Collins, Jr. in Wake County Superior Court. Heard in the Court of Appeals

12 February 2025.

> *Attorney General Jeff Jackson, by Special Deputy Attorney General, Mary L.
> Lucasse, and Assistant Attorney General, Scott A. Conklin, for the State.*

> *Elliot Morgan Parsonage, PLLC, by Robert M. Elliot, Daniel C. Lyon, and
> Elizabeth B. Hilker, for the plaintiffs-appellants.*

TYSON, Judge.

North Carolina Forest Service's ("NCFS") current and former employees

("foresters") sued the North Carolina Department of Environmental Quality ("DEQ"),

the agency responsible for paying them overtime compensation. The trial court

granted declaratory judgment in favor of Class 1B and Class 2 foresters, finding and

concluding those foresters were owed overtime compensation. The State appeals

those portions of the trial court's order. The foresters cross appeal the portions of the

trial court's judgment concluding Class 1B foresters should be paid straight time for overtime wages, versus time-and-a-half. The foresters consequently argue Class 1A foresters should have been certified. We affirm in part and remand for additional findings of fact concerning the Evans Road Fire.

## I.    Background

NCFS is charged with promoting and protecting North Carolina's forests from wildfires, natural disasters, insects, and disease. Over the course of this litigation, the organizational structure of the NCFS has changed, the nomenclature used to refer to the foresters has changed, and NCFS has been transferred between state agencies.

In 2011, the North Carolina General Assembly transferred the Division of Forest Resources ("DFR") from the North Carolina Department of Environment and Natural Resources ("DENR") to the Commissioner of Agriculture and the North Carolina Department of Agriculture and Consumer Services ("Agriculture"). S.L. 2011-145, s. 13.25(a). In 2013, DFR was renamed the North Carolina Forest Service, i.e., NCFS. S.L. 2013-155, s. 23. In 2015, DENR was restructured and renamed the DEQ. S.L. 2015-241, s. 14.30(c). Throughout this opinion, "Department" will be used to reference whichever agency or department the NCFS was supervised under during the requisite period, and NCFS will be used instead of DFR.

A group of thirty-four foresters ("Plaintiffs") filed a complaint on behalf of themselves and others similarly situated on 1 December 2008. Plaintiffs were

current or former foresters employed by NCFS. The complaint listed DENR, the then-acting Secretary of DENR, and the State of North Carolina as Defendants. Plaintiffs asserted state and federal law claims against Defendants for overtime payments purportedly earned while they were fighting forest fires.

In their first claim, Plaintiffs sought and requested relief pursuant to N.C. Gen. Stat. § 113-56.1 (2007), recodified as N.C. Gen. Stat. § 106-903 (2011) (the "Statutory Claim"). Plaintiffs also brought two separate claims under the federal Fair Labor Standards Act ("FLSA"). *See* 29 U.S.C. §§ 201 to 219 (2024). The trial court granted Defendants' motion to dismiss the complaint based upon sovereign immunity. On appeal, this Court reversed the superior court, holding in part the State had waived sovereign immunity. *Brown v. N.C. Dep't of Env't & Natural Res. ("Brown I")*, 212 N.C. App. 337, 342, 714 S.E.2d 154, 158 (2011), *disc. review denied*, 365 N.C. 570, 724 S.E.2d 525 (2012) (table).

After remand to Wake County Superior Court, Plaintiffs filed a supplemental complaint. This complaint listed DENR, Agriculture, the then-acting Secretary of DENR, and the Commissioner of Agriculture as Defendants. Defendants answered. Following discovery, Defendants filed a Motion for Partial Judgment on the Pleadings, which was granted as to Plaintiffs' Second Claim for Relief under the FLSA.

Defendants filed a Motion for Partial Summary Judgment on 2 April 2013. Following hearings, the trial court entered its 2 October 2013 Memorandum and

Opinion. The trial court held the statute provides for overtime wages to be paid at an hour-for-hour rate ("straight time"). In addition, the trial court "interpret[ed] the statute to mean that Defendants were and are obligated to pay overtime compensation," but it nevertheless denied the motion for summary judgment because "genuine issues of material fact, including the amount of other funds available in the Department, additional legal or practical constraints on the interdepartmental transfer of funds, and the amount of compensation owed to Plaintiffs," existed.

Over Defendants' objection, the trial court permitted Plaintiffs to again amend their complaint on 17 March 2014. Plaintiffs added four contractual claims, alleging the State had failed to pay overtime compensation at a time-and-a-half rate to professional employees who had earned overtime fighting fires on federal or non-state-owned land. Plaintiffs asserted Defendants were reimbursed for costs pursuant to contracts with federal agencies at a time-and-a-half rate. Defendants answered the Amended Complaint. Plaintiffs then voluntarily dismissed their remaining FLSA claim, which was Plaintiffs' third claim for relief.

Following a hearing on Defendants' motion for partial summary judgment on the newly-added contract claims, the trial court granted summary judgment in favor of Defendants on Plaintiffs' fourth claim for breach of contract and seventh claim for breach of fiduciary duty on 20 December 2017. The trial court denied the motion regarding Plaintiffs' fifth claim for an implied-in-fact contract and sixth claim alleging Plaintiffs were third-party beneficiaries of contracts with federal agencies

("Contract Claim"). Plaintiffs then voluntarily dismissed their fifth claim for breach of an implied-in-fact contract.

This appeal is based on the trial court's orders regarding two remaining claims: (1) the Statutory Claim pursuant to N.C. Gen. Stat. § 106-903; and, (2) the Contract Claim for overtime wages earned fighting fires on lands under federal jurisdiction, for which the Forest Service had received reimbursement, in whole or in part, for its fire suppression costs.

Over Defendants' objection, the trial court certified Class 1B foresters for the Statutory Claim and Class 2 foresters for the Contract Claim. The trial court determined Defendants' liability in favor of Plaintiffs in its 27 January 2021 Declaratory Judgment Order.

Following further discovery, Plaintiffs sought rulings on two issues concerning class damages. The trial court's 15 November 2021 Order denied Defendants' claim and affirmative defense for recoupment wages and held Class 2 Plaintiffs are "entitled to overtime compensation at the rate of 'one and one half times base pay' for 100% of the overtime worked on the Evans Road Fire[.]" The trial court further ordered the parties to determine whether they could agree to stipulate the damages.

The parties stipulated to the identity of 152 class members, the overtime hours worked by each of the Class 1B and Class 2 members, and the value of those overtime hours. In its 23 November 2022 Order, the trial court "award[ed] each individual class member the number of overtime hours worked, and the value of those hours as

set forth in the attached Spreadsheet." The trial court held any Class 1B or Class 2 member "who has vested in the North Carolina Retirement System [ ] and retired is entitled to receive additional retirement benefits[.]"

The trial court, however, held Plaintiffs had not provided any testimony from an actuarial expert witness regarding damages due to individual class members for additional retirement benefits or social security benefits and had "waived their right to provide expert testimony on these issues." The trial court further ordered "[a]fter there is a final determination of any overtime due[,]" the Defendants "will be responsible for paying any amount required by the Retirement System or the federal agencies administering Social Security and Medicare as a result of any retroactive adjustments."

Defendants filed their notice of appeal on 22 December 2022. Plaintiffs cross-appealed.

The parties have jointly moved this Court for an order dismissing the 146 class members who have settled or withdrawn their claims against Defendants. We allowed the joint motion, and there are six remaining Plaintiffs and/or class members who have not settled their claims with Defendants: Lloyd Brown, Gary Curcio, Hugh Hassell, William Palmer, Marvin Reed (deceased 2021), and James Williams (deceased 2011).

## II. Jurisdiction

The orders entered by the trial court from 2013 to 2022, culminating with the

trial court's 23 November 2022 order awarding specific damages to the foresters, constitute a final judgment in this case. This Court possesses jurisdiction pursuant to N.C. Gen. Stat. §§ 1-279.1 and 7A-27(b)(4) (2023).

## III.    Issues

Defendant first argues the trial court erred by concluding Class 1B Plaintiffs were entitled to monetary payments for overtime work pursuant to N.C. Gen. Stat. § 106-903 (2011).

Defendant next argues the trial court erred by concluding the foresters should be reimbursed on a time-and-a-half basis for overtime hours spent fighting fires pursuant to certain federal reimbursement contracts. Defendant asserts, if this Court concludes the foresters are third-party beneficiaries to the federal reimbursement contracts and concludes they should be paid on a time-and-a-half basis, the trial court erred in calculating the payments due to the foresters. More specifically, Defendant argues the trial court erred by striking Defendants' affirmative defense for a setoff to recoup any overpayments to the foresters; Defendant further asserts the trial court erred by awarding Class 2 plaintiffs 100% of overtime hours worked on the Evans Road fire.

Defendant lastly argues the trial court erred by requiring the State retirement system and certain federal benefits programs to recalculate the class members' benefits pursuant to the number of overtime hours worked at the respective overtime wages.

In Plaintiffs' cross appeal, Plaintiffs argue the trial court erred by concluding "overtime compensation," as defined in N.C. Gen. Stat. § 106-903, should be paid on a straight time basis. Plaintiffs argue, if this Court agrees N.C. Gen. Stat. § 106-903 requires the foresters to be paid on a time-and-a-half basis, the trial court erred by failing to certify Class IA.

## IV.    Overtime Compensation Statute

### A. Standard of Review

"Issues of statutory construction are questions of law, reviewed de novo on appeal." *McKoy v. McKoy*, 202 N.C. App. 509, 511, 689 S.E.2d 590, 592 (2010) (citation omitted). "Conclusions of law are reviewed de novo and are subject to full review." *State v. Biber*, 365 N.C. 162, 168, 712 S.E.2d 874, 878 (2011).

"Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632-33, 669 S.E.2d 290, 294 (2008) (citations and internal quotation marks omitted).

### B. Statutory History

At the time the foresters filed suit, North Carolina General Statutes provided: "The Department *shall*, within funds appropriated to the Department, provide overtime compensation to the professional employees of the Division of Forest Resources involved in fighting forest fires." N.C. Gen. Stat. § 113-56.1 (2007) (emphasis supplied).

N.C. Gen. Stat. § 113-56.1 was purportedly enacted in 1982 "after the director of [NCFS] advised legislators that the Department's ability to offer only compensatory time, and not monetary compensation for overtime hours, hampered the Department's ability to deliver services and programs." The reason the compensatory time policy negatively impacted NCFS's recruitment and retention was because foresters "in heavy fire districts necessarily took their compensatory time during non-emergency periods and had insufficient time to perform their normal duties, thereby undermining forest management and other programs."

N.C. Gen. Stat. § 113-56.1 was later recodified as N.C. Gen. Stat. § 106-903 in 2011. This Court previously held, in *Brown I*, "the State has statutorily committed itself to provide a right to overtime compensation. By the use of the word 'shall' the statute unambiguously provides a right to overtime compensation." 212 N.C. App. at 342, 714 S.E.2d at 158.

Plaintiffs argue N.C. Gen. Stat. § 106-903 provides the foresters must be paid monetary compensation for any overtime hours accrued and not otherwise compensated for with compensatory time. Defendants argue the State's general compensatory time policy satisfies the overtime compensation requirement outlined in N.C. Gen. Stat. § 106-903.

### C. Statutory Construction

This Court has explained the purpose of statutory construction is to comply with the intent of the legislature:

> The principal goal of statutory construction is to accomplish the legislative intent. The process of construing a statutory provision must begin with an examination of the relevant statutory language. If the statute's plain language is clear and unambiguous, this Court applies the statute as written and does not engage in further statutory construction. However, where the statute is ambiguous or unclear as to its meaning, the courts must interpret the statute to give effect to the legislative intent.

*In re McClatchy Co., LLC*, 386 N.C. 77, 86, 900 S.E.2d 765, 772 (2024) (citations, alterations, and internal quotation marks omitted).

Black's Law Dictionary defines "compensation" as, "[r]emuneration and other benefits received in return for services rendered; esp., salary or wages." *Compensation*, *Black's Law Dictionary* 354 (11th ed. 2019). Because the plain language of "compensation" is not clear on whether it should be monetary or compensatory, we must determine the legislature's intent. The Director of the NCFS had advised legislators of the Department's ability to only offer compensatory time off as compensation, and not monetary compensation, impeded NCFS's ability to deliver important services prior to the enactment of N.C. Gen. Stat. § 113-56.1, which was later recodified as N.C. Gen. Stat. § 106-903 in 2011. Following this advice, the legislature granted the Director's request through appropriations bills enacted in 1981 and 1982, which provided appropriations for monetary overtime compensation for foresters. This history illustrates a clear legislative intent to enact legislation to provide monetary compensation for foresters who had worked overtime.

- 10 -

This Court has held once wages or benefits are earned and accrued under a statutory scheme, an employer may not rescind those benefits. *See Narron v. Hardee's Food Systems, Inc.*, 75 N.C. App. 579, 583, 331 S.E.2d 205, 208 (1985), *overruled on other grounds by J & B Slurry Seal Co. v. Mid–South Aviation, Inc.*, 88 N .C. App. 1, 362 S.E.2d 812 (1987) ("Once the employee has earned the wages and benefits under this statutory scheme, the employer is prevented from rescinding them[.]"); *Hubbard v. City of Cumberland*, 143 N.C. App. 149, 153, 544 S.E.2d 587, 590 (2001) ("Defendant County has a statutory duty to provide the salaries to which it has committed itself in the enacted budget ordinance."); *Hamilton v. Memorex Telex Corp.*, 118 N.C. App. 1, 10, 454 S.E.2d 278, 282 (1995) (explaining "once the employee has earned the wages and benefits under this statutory scheme the employer may not rescind them," although certain benefits, such as vacation pay, may be forfeited "so long as the employer notifies the employee of the conditions of such a forfeiture prior to the time he earns such benefits").

Here, the trial court held the State had satisfied its obligations and mitigated the damages for foresters, who had accrued compensatory time and used their compensatory time according to the State's compensatory time policy. The State has not satisfied its obligations towards foresters who had accrued compensatory time, but such compensatory time was either not taken or erroneously forfeited.

The trial court correctly concluded the legislature intended for N.C. Gen Stat. § 106-903 to provide overtime compensation to the foresters. *See In re McClatchy*,

386 N.C. at 86, 900 S.E.2d at 772. N.C. Gen Stat. § 106-903 mandates NCFS to provide overtime compensation to employees who accrued overtime while fighting fires. *Id.* Once those benefits have been earned, the State may not rescind those benefits. *Narron*, 75 N.C. App. at 583, 331 S.E.2d at 208; *Hubbard*, 143 N.C. App. at 153, 544 S.E.2d at 590; *Hamilton*, 118 N.C. App. at 10, 454 S.E.2d at 282. That portion of the trial court's order is affirmed.

## V. Contract Claim

Defendants argue the trial court erred by concluding the foresters were third-party beneficiaries to certain federal reimbursement contracts for fighting fires on federal land and by ordering foresters should be reimbursed on a time-and-a-half basis. If this Court agrees the foresters were third-party beneficiaries to the federal contracts, Defendants argue the parties acted *ultra vires* by signing the contracts.

## A. Standard of Review

Defendants dispute the trial court's conclusions of law contained in a declaratory judgment.

> [I]n a declaratory judgment action where the trial court decides questions of fact, we review the challenged findings of fact and determine whether they are supported by competent evidence. If we determine that the challenged findings are supported by competent evidence, they are conclusive on appeal. We review the trial court's conclusions of law *de novo.*

*Calhoun v. WHA Med. Clinic, PLLC*, 178 N.C. App. 585, 596-97, 632 S.E.2d 563, 571 (2006) (citations omitted), *disc. review denied*, 361 N.C. 350, 644 S.E.2d 5 (2007).

## B. Third-Party Beneficiary

The record contains evidence tending to show the State had periodically entered into a "Master Cooperative Wildland Fire Management and Stafford Act Response Agreement" ("Master Agreement"). The Master Agreement was entered between agencies of the federal government and NCFS, and provides for cooperation between both agencies fighting forest fires, for the coordination and exchange of personnel, equipment, supplies, services, and for funding. Each Master Agreement was effective for a term of five years and provided for an Annual Operating Plan (AOP) for each of the five years. These agreements are collectively referred to as "Reimbursement Agreements."

From 2004 until 2008, NCFS sought and received reimbursement from the federal government under the Reimbursement Agreements for the foresters' overtime work at a time-and-a-half rate. In turn, Class 2 Plaintiffs were generally paid overtime compensation at a time-and-a-half rate for their work on Reimbursable Incidents.

In June 2008, NCFS entered into the 2008 Master Agreement, which incorporated AOPs for each year of the agreement from 2008 to 2012. The 2008 Master Agreement was signed by William G. Ross, Secretary for NCFS, and Michael Bryant, Director of Purchasing and Services for NCFS. The 2008 Master Cooperative Agreement, included the following language: "**Authorized Representatives**: By signature below, all signatories to this agreement certify that the individuals (Agency

Representative, Agency Administrator, Unit Administrator, Unit Administrator) listed in this document are authorized to act in their respective areas for matters related to this Agreement."

The AOPs for the years 2008 to 2010 each contain the following language: "Overtime will be paid at one and one half times base pay for all NC[FS] personnel (non-exempt and exempt.)" The 2011 and 2012 AOPs were silent as to the rate at which overtime compensation would be paid to Class 2 plaintiffs.

In 2008, fighting a fire identified as the "Evans Road Fire," required substantial overtime hours by Class 2 plaintiffs. The State sought and received reimbursement of overtime compensation from the federal government at the rate of time-and-a-half base pay pursuant to the 2008 AOP. The State determined that, due to its general policies requiring payment of any overtime compensation permitted to professional and other exempt employees at a straight time rate, the Class 2 plaintiffs should not be paid overtime compensation at the rate of time-and-a-half of base pay, as was contemplated by the Reimbursement Agreements. The State held approximately $250,000 in funds received from the federal government regarding the Evans Road Fire.

"To establish a claim based on the third party beneficiary contract doctrine, a complaint's allegations must show: (1) the existence of a contract between two other persons; (2) that the contract was valid and enforceable; and (3) that the contract was entered into for his direct, and not incidental, benefit." *United Leasing Corp. v.*

*Miller*, 45 N.C. App. 400, 405-06, 263 S.E.2d 313, 317 (1980) (citation omitted).

"The practice of allowing third-party beneficiaries not in privity of contract to bring an action in their own name to enforce the contract made for their benefit was recognized in North Carolina as early as 1842." *Carl v. State*, 192 N.C. App. 544, 551, 665 S.E.2d 787, 794 (2008) (citation and quotation marks omitted). "The rule is well established in this jurisdiction that a third person may sue to enforce a binding contract or promise made for his benefit even though he is a stranger both to the contract and to the consideration." *Id.* (citation and quotation marks omitted).

> A person is a direct beneficiary of the contract if the contracting parties intended to confer a legally enforceable benefit on that person. It is not enough that the contract, in fact, benefits the third party, if, when the contract was made, the contracting parties did not intend it to benefit the third party directly.

*Revels v. Miss Am. Org.*, 182 N.C. App. 334, 336, 641 S.E.2d 721, 723 (2007) (citation, alterations, and internal quotation marks omitted).

"In determining the intent of the contracting parties, the court should consider the circumstances surrounding the transaction as well as the actual language of the contract." *Holshouser v. Shaner Hotel Grp. Props. One*, 134 N.C. App. 391, 400, 518 S.E.2d 17, 25 (1999), *aff'd*, 351 N.C. 330, 524 S.E.2d 568 (2000) (citation, alterations, and internal quotation marks omitted).

"[C]ontracts are to be construed consistently with reason and common sense." *See Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 365 N.C. 520,

525, 723 S.E.2d 744, 748 (2012) (citation and internal quotation marks omitted).

The trial court properly held the foresters were intended beneficiaries of the Master Agreement, as the AOPs directly referenced the rate the foresters were to be paid for the overtime hours spent fighting fires on federal lands. *See id.*; *United Leasing*, 45 N.C. App. at 405-06, 263 S.E.2d at 317. Additionally, "the circumstances surrounding the transaction" indicate the contracting parties directly intended to compensate the foresters for overtime hours spent *fighting fires on federal land.* *Holshouser*, 134 N.C. App. at 400, 518 S.E.2d at 25 (citation, alterations, and internal quotation marks omitted). Defendants' argument is overruled.

### *C. Ultra Vires*

"As a creature of the Legislature, an agency of the State can only exercise (1) the powers granted in express terms; (2) those necessarily or fairly implied in or incident to the powers expressly granted; and (3) those essential to the accomplishment of the declared objects of the agency." *Carl*, 192 N.C. App. at 553, 665 S.E.2d at 795 (citation, alteration, and internal quotation marks omitted).

An agency "may exercise only such authority as is vested in it by statute." *Utilities Com. v. Motor Lines, Inc.*, 240 N.C. 166, 168, 81 S.E.2d 404, 406 (1954). "When a State agency attempts to enter into a contract which does not come within the scope of its powers, the contract thereby formed is *ultra vires.*" *Carl*, 192 N.C. App. at 553, 665 S.E.2d at 795 (citation omitted).

Defendants' *ultra vires* defense is without merit. N.C. Gen. Stat. § 106-903

(2011) expressly allowed the Department to "provide overtime compensation to the professional employees of the Division of Forest Resources involved in fighting forest fires." This Court has previously held "the State has statutorily committed itself to provide a right to overtime compensation." *Brown I*, 212 N.C. App. at 342, 714 S.E.2d at 158. The trial court properly denied Defendants' defense of *ultra vires* regarding overtime compensation; Defendants were expressly required by statute to provide overtime compensation to foresters. *See Pritchard v. Elizabeth City*, 81 N.C. App. 543, 552, 344 S.E.2d 821, 826 (1986).

## VI.    Payments

Defendants argue the payments to the remaining Plaintiffs should be reduced in two ways. First, Defendants argue any payments owed to the foresters should be setoff or reduced by the amount of any purported overpayments to the foresters throughout certain weeks of their career with NCFS. For example, if any foresters misreported or overstated their hours, Defendants argue those Plaintiffs' awards should be reduced.

Second, Defendants argue they were only reimbursed by the federal government for 60% of the costs of the Evans Road fire, because 40% of that fire burned on state property. Defendants argue the Plaintiffs should only be awarded time-and-a-half for 60% of the overtime hours accrued while fighting the Evans Road fire.

## A.  Standard of Review

"Our standard of review of an appeal from summary judgment is de novo; such judgment is appropriate only when the record shows that 'there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.'" *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (quoting *Forbis v. Neal*, 361 N.C. 519, 523-24, 649 S.E.2d 382, 385 (2007)).

Defendants dispute the trial court's decision regarding several questions of fact. "[I]n a declaratory judgment action where the trial court decides questions of fact, we review the challenged findings of fact and determine whether they are supported by competent evidence. If we determine that the challenged findings are supported by competent evidence, they are conclusive on appeal." *Calhoun*, 178 N.C. App. at 596-97, 632 S.E.2d at 571 (citations omitted). "We review the trial court's conclusions of law de novo." *Id.*

## B. Overpayments

We first address Defendants' setoff argument. Our General Statutes specify the State is required to recoup any "overpayment of State funds to any person in a State-funded position[.]" N.C. Gen. Stat. § 143-64.80(a) (2023). Such overpayments "shall be recouped by the entity that made the overpayment and, to the extent allowed by law, the amount of the overpayment may be offset against the net wages of the person receiving the overpayment." *Id.*

No State agency has the authority to "forgive repayment of an overpayment of State funds," and the agency "shall have a duty to pursue the repayment of State

funds by all lawful means available, including the filing of a civil action in the General Court of Justice." N.C. Gen. Stat. § 143-64.80(b) (2023).

Previously, this Court heard claims for recoupment of overpayments. The plaintiff was personally provided notice about any overpayments and given an opportunity to challenge any overpayment in a hearing before the Office of Administrative Hearings ("OAH"). *See Moss v. N.C. Dep't of State Treasurer*, 282 N.C. App. 505, 508, 872 S.E.2d 113, 116 (2022). The OAH has also adjudicated similar issues where the State had sought recoupment pursuant to N.C. Gen. Stat. § 143-64.80 for State overpayments, and OAH issued its opinions following a hearing. *See Townsend v. N.C. Ret. Sys.*, 2010 NC OAH LEXIS 207 (Feb. 19, 2010); *Watson v. N.C. Dep't. of State Treasurer, Ret. Sys. Div.*, 2012 N.C. OAH Lexis 79 (Nov. 1, 2012).

Here, the trial court held "there is an established administrative procedure available for the State to recoup overpayments which would include proper notice to the individual class members affected, and [to] permit discovery and the right of the members to defend the claims on individual ground."

We agree with the trial court. N.C. Gen. Stat. § 143-64.80 does not contain a statute of limitations for when the State may seek repayment. We affirm the trial court's dismissal of the State's recoupment defense without prejudice. The State may provide notice of any repayments sought against the foresters and seek to recoup those overpayments under the "established administrative procedure."

### C. Evan's Road Fire

Evidence before the trial court tended to show NCFS and the U.S. Fish and Wildlife Service ("USFWS") executed a memorandum of understanding on 4 June 2008. The Memorandum of Understanding was "entered into for the purpose of combating the Evans Road Fire" and contained the following language:

> Fire suppression costs will be pro-rated based on the percentage of ownership of the total acres burned. Any billing for reimbursement will be based on these percentages. Final acreage will be determined at time of containment. If the fire should escape containment lines[,] the calculated pro-rated percentages will be used for cost incurred between the date of containment and the date of escape. A new pro-rated percentage will be calculated to cover cost[s] incurred after the fire escapes.

The incident summary form for the Evans Road fire provided 40% of the acreage the fire spanned was on either North Carolina lands or on private lands. NCFS's final cost summary estimated the State shared 40% of the costs spent fighting the fire.

Evidence in the record also tended to show the federal government paid the State for 100% of the overtime hours the firefighters spent working on the Evans Road fire, both from FEMA and the USFWS. The trial court found:

> 24. The State documented its receipt of these funds which were earmarked for the Class 2 plaintiffs in Deposition Exhibit 149 (Exhibit 6 presented in support of this motion). The document is clear as to the intent of those funds:
>
> > Pending Obligation: .5 overtime for exempt employees* These funds must be reserved for payment to employees pending O[vertime] Lawsuit. If determined funds are not to be paid to employees

then the State did not incur the expense and funds
must be returned to FEMA and USFWS.

The trial court also found the State had agreed all of Class 2 members' overtime hours totaled $247,562.04 and the State had received $250,000 from the federal government for the overtime hours worked by the foresters, which would cover 100% of the overtime hours owed to the Class 2 foresters.

The trial court concluded "based on the evidence presented, there is no genuine issue of material fact as to this claim, that the State has received the funds representing 100% of the overtime worked on the Evans Road Fire" and thus all Class 2 plaintiffs should receive time-and-a-half for all overtime hours spent on the Evans Road Fire.

A genuine issue of material fact exists regarding whether the funds earmarked by the State from the federal government covered 100% or 60% of the overtime hours earned by the foresters. This issue is remanded to the trial court to hold an evidentiary hearing. *See In re Jones*, 362 N.C. at 573, 669 S.E.2d at 576.

## VII.  Speculative Damages

Defendants argue the trial court's order directing the State's retirement system and other federal benefits programs to recalculate the foresters' benefits pursuant to the overtime hours worked is speculative and based on insufficient evidence.

### A.  Standard of Review

Brown v. N.C. Dep't of Envtl. Quality

*Opinion of the Court*

"Our standard of review of an appeal from summary judgment is de novo; such judgment is appropriate only when the record shows that 'there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.'" *In re Jones*, 362 N.C. at 573, 669 S.E.2d at 576 (quoting *Forbis*, 361 N.C. at 523-24, 649 S.E.2d at 385).

> [I]n a declaratory judgment action where the trial court decides questions of fact, we review the challenged findings of fact and determine whether they are supported by competent evidence. If we determine that the challenged findings are supported by competent evidence, they are conclusive on appeal. We review the trial court's conclusions of law *de novo*.

*Calhoun*, 178 N.C. App. at 596-97, 632 S.E.2d at 571 (citations omitted).

## B. Analysis

"Damages which are uncertain and speculative, or which are not the natural and probable result of the breach, are too remote to be recoverable." *Johnson v. R. R.*, 184 N.C. 101, 105, 113 S.E. 606, 608 (1922) (citation omitted).

"The objective of compensatory damages is to restore the plaintiff to his original condition or to make the plaintiff whole." *Watson v. Dixon*, 352 N.C. 343, 347, 532 S.E.2d 175, 178 (2000) (citing *Bowen v. Fidelity Bank*, 209 N.C. 140, 144, 183 S.E. 266, 268 (1936) ("[C]ompensatory damages are allowed as indemnity to the person who suffers loss in satisfaction and recompense for the loss sustained. The purpose of the law is to place the party as near as may be in the condition which he would have occupied had he not suffered the injury complained of.")).

The trial court made the following findings of fact and conclusions of law:

> 2. In response to this Court's DJ Order, the parties have stipulated to the number of overtime hours and the value of those overtime hours for Class IB and Class 2 members. A spreadsheet prepared by Craig Clarke on July 2, 2021, updated on September 9, 2022, and updated again following the September 16, 2022 hearing ("the Spreadsheet") shows the parties' stipulations including the overtime hours worked by each individual who is a member of Class IB and Class 2. The Spreadsheet includes additional stipulated information for each claimant (for example, the period of time worked by each claimant, the rate of pay for each claimant as of July 2, 2021 (or at the date of separation or retirement if prior to July 2, 2021), and the end date after which no additional overtime hours subject to the DJ Order was earned by each claimant). The parties have represented to this Court that during discovery, the defendants provided information and spreadsheets for each individual claimant providing the backup information supporting the information in the Spreadsheet. The plaintiffs had an opportunity to review that information and to depose the defendant's representative at the North Carolina Forest Services, Craig Clarke, regarding the information provided. Attached under seal pursuant to the Consent Protective Order Filed June 5, 2013, is the Spreadsheet stipulated to by the parties. By this Order, the Court awards each individual class member the number of overtime hours worked, and the value of those hours as set forth in the attached Spreadsheet.
>
> 3. Based on the Spreadsheet, the parties have stipulated that when totaled, the overtime hours and the value of the individual calculations for Class IB equals $233,777.12 and the value of Class 2 equals $247,562.04. By stipulating to these gross amounts, the parties have also stipulated to the overtime hours calculated for each individual class member and the value of overtime hours. Therefore, any damages allocated to individual class members are and must be based on the individual calculations in the Spreadsheet.

4. Any member of Class IB or Class 2 who has vested in the North Carolina Retirement System ("Retirement System") and retired is entitled to receive additional retirement benefits based on an underpayment of overtime as set forth in this order awarding overtime to individual claimants pursuant to the DJ Order.

. . .

6. The Plaintiffs have not provided any testimony from an actuarial expert witness regarding damages due individual class members for additional retirement benefits or social security benefits. The discovery cutoff has passed. The Plaintiffs have waived their right to provide expert testimony on these issues.

7. The Retirement System is not a party to this litigation.

8. After there is a final determination of any overtime due to the Plaintiffs, the defendant agencies shall submit a request to the Retirement System for retroactive adjustments for each claimant due to the underreporting of compensation. This Court understands that the Retirement System will calculate the cost payable by the defendant agency as a result of the underreporting of compensation. If the defendant agencies' correction affects any individual's retirement benefit, the defendant agencies will be required to pay the costs to the Retirement System so that it will adjust the retirement benefits for any affected individual to reflect the actual compensation set forth in this order.

9. Any information required by the Retirement System to determine whether there is an impact to an individual's retirement benefit (for example, the last date overtime was earned), will be based on the information known to the Retirement System or the stipulated information included in the Spreadsheet.

10. After there is a final determination of any overtime due

> to the Plaintiffs, the defendant agencies shall also inform the relevant federal agencies administering Social Security and Medicare that it has made retroactive adjustments for each claimant due to the underreporting of compensation. Defendant agencies will be responsible for paying any amount required by the federal agencies to those federal agencies as a result of the underpayment.

Here, the damages the trial court determined in this case are not speculative. *See Johnson*, 184 N.C. at 105, 113 S.E. at 608. The damages owed to the foresters were calculated using the number of overtime hours owed and the respective overtime rate for each class. The parties stipulated to the number of overtime hours due to each forester when calculating the damages due to both Class 1B and Class 2 foresters. The trial court's award "restore[s] the plaintiff[s] to [their] original condition" and "make[s] the plaintiff[s] whole." *Watson*, 352 N.C. at 347, 532 S.E.2d at 178. Defendants' arguments are overruled.

## VIII.    Cross-Appeal

Plaintiffs argue the trial court erred by concluding "overtime compensation" in N.C. Gen. Stat. § 106-903 includes overtime wages paid on a straight time basis. The Plaintiffs further argue, if this Court agrees N.C. Gen. Stat. § 106-903 mandates the foresters must be paid on a time-and-a-half basis, the trial court erred by failing to certify Class IA.

### A. Standard of Review

As stated previously, "[o]ur standard of review of an appeal from summary judgment is de novo; such judgment is appropriate only when the record shows that

'there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.'" *In re Jones*, 362 N.C. at 573, 669 S.E.2d at 576 (quoting *Forbis*, 361 N.C. at 524, 649 S.E.2d at 385).

"Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *Williams*, 362 N.C. at 632-33, 669 S.E.2d at 294 (citation and internal quotation marks omitted).

"Issues of statutory construction are questions of law, reviewed *de novo* on appeal." *McKoy*, 202 N.C. App. at 511, 689 S.E.2d at 592.

A trial court's "evaluation of the legal criteria to establish a class, [is reviewed] de novo." *Surgeon v. TKO Shelby, LLC*, 385 N.C. 772, 776, 898 S.E.2d 732, 736 (2024). "[T]he trial court may, in its discretion, certify a class" only after the "legal prerequisites are met." *Id.* at 777, 898 S.E.2d at 737. "This Court reviews a trial court's class certification order for abuse of discretion." *Id.* at 776, 898 S.E.2d at 736.

## B. Analysis

N.C. Gen. Stat. § 106-903 (2011), which was previously codified as N.C. Gen. Stat. § 113-56.1 (2007) at the time the foresters initiated this suit, provided: "The Department *shall*, within funds appropriated to the Department, provide overtime compensation to the professional employees of the Division of Forest Resources involved in fighting forest fires." N.C. Gen. Stat. § 106-903 (2011) (emphasis supplied).

This Court has previously held "the State has statutorily committed itself to

provide a right to overtime compensation" by enacting N.C. Gen. Stat. § 113-56.1 (2007) and later N.C. Gen. Stat. § 106-903 (2011). *Brown I*, 212 N.C. App. at 342, 714 S.E.2d at 158.

The statute, however, does not specify whether overtime compensation must be paid on a straight time or a time-and-a-half basis. The trial court held in its 2 October 2013 Order:

> The legislature did not clearly and unequivocally state the rate of the overtime pay, as the statute is silent on that issue. Given the evidence of state personnel policy in effect when the statute was enacted, as well as the practice at that time by the Department of providing for straight time overtime for FLSA-exempt employees involved in fighting fires, and applying the canons of strict construction stated in the Stone and FAA decisions, the undersigned concludes that the statute provides for overtime paid at a rate of hour for hour.

The trial court relied on *Stone v. N.C. Dept. of Labor.*, which held statutes that "permit suit in derogation of sovereign immunity" and "[s]tatutes in derogation of the common law [ ] should be strictly construed." 347 N.C. 473, 479, 495 S.E.2d 711, 714-15 (1998) (first citing *Floyd v. N.C. State Highway & Pub. Works Comm'n*, 241 N.C. 461, 464, 85 S.E.2d 703, 705 (1955), *overruled in part on other grounds by Barney v. N.C. State Highway Comm'n*, 282 N.C. 278, 284-85, 192 S.E.2d 273, 277 (1972); and then citing *McKinney v. Deneen*, 231 N.C. 540, 542, 58 S.E.2d 107, 109 (1950)).

The trial court also relied upon *F.A.A. v. Cooper*, which provides:

> Any ambiguities in the statutory language are to be construed in favor of immunity, so that the Government's

Brown v. N.C. Dep't of Envtl. Quality

*Opinion of the Court*

> consent to be sued is never enlarged beyond what a fair reading of the text requires. Ambiguity exists if there is a plausible interpretation of the statute that would not authorize money damages against the Government.

566 U.S. 284, 290-91, 182 L. Ed. 2d 497, 508 (2012) (citations omitted).

The rationale in *F.A.A.* is consistent with our State's precedents. "State statutes waiving this immunity, being in derogation of the sovereign right to immunity, must be strictly construed." *Guthrie v. N.C. State Ports Authority*, 307 N.C. 522, 537-38, 299 S.E.2d 618, 627 (1983); *Irving v. Charlotte-Mecklenburg Bd. of Educ.*, 368 N.C. 609, 611, 781 S.E.2d 282, 284 (2016). The trial court did not err by holding NCFS had complied with the statute by paying the foresters overtime pay on a straight time basis.

It is unnecessary for us to address whether the trial court erred by denying the Class 1A certification. The trial court's denial of Class 1A was based upon its prior holding that overtime compensation due under N.C. Gen. Stat. § 106-903 (2011) is satisfied by paying the foresters on a straight time basis.

## IX. Conclusion

N.C. Gen Stat. § 106-903 requires NCFS to provide overtime compensation to the foresters. *See In re McClatchy*, 386 N.C. at 86, 900 S.E.2d at 772. Once those benefits have been earned, the State may not rescind them. *Narron*, 75 N.C. App. at 583, 331 S.E.2d at 208; *Hubbard*, 143 N.C. App. at 153, 544 S.E.2d at 590; *Hamilton*, 118 N.C. App. at 10, 454 S.E.2d at 282. The trial court did not err by concluding the

Class 1B foresters were entitled to monetary compensation for overtime hours worked if the accrued compensatory time was not used or taken.

The trial court properly held the foresters were intended beneficiaries of the Master Agreement, as the AOPs directly referenced the rate the foresters were to be paid for the overtime hours spent fighting fires. *See United Leasing*, 45 N.C. App. at 405-06, 263 S.E.2d at 317; *Variety Wholesalers*, 356 N.C. at 525, 723 S.E.2d at 748; *Holshouser*, 134 N.C. App. at 400, 518 S.E.2d at 25; *Revels*, 182 N.C. App. at 336, 641 S.E.2d at 723. The trial court properly denied Defendants' defense of *ultra vires* regarding overtime compensation when they were expressly required to provide overtime compensation to foresters pursuant to N.C. Gen. Stat. § 106-903. *See Pritchard*, 81 N.C. App. at 552, 344 S.E.2d at 826.

We affirm the trial court's dismissal of the State's recoupment defense without prejudice. The State may provide notice of any repayments sought against the foresters and seek to recoup those overpayments under the "established administrative procedure." *See Moss*, 282 N.C. App. at 508, 872 S.E.2d at 116; *Townsend*, 2010 NC OAH LEXIS 207 (Feb. 19, 2010); *Watson*, 2012 N.C. OAH Lexis 79 (Nov. 1, 2012).

A genuine issue of material fact exists regarding whether the funds earmarked by the State from the federal government covered 100% or 60% of the overtime hours accrued by foresters working on the Evans Road Fire. This issue is remanded to the trial court to hold an evidentiary hearing regarding whether the funds provided by

the federal government were intended to cover 100% or 60% of the overtime hours spent on the Evans Road Fire. *See In re Jones*, 362 N.C. at 573, 669 S.E.2d at 576.

The trial court's damages regarding certain retirement benefits and federal benefits due to the foresters for overtime hours worked are not speculative. *See Johnson*, 184 N.C. at 105, 113 S.E. at 608. The trial court's award "restore[s] the plaintiff[s] to [their] original condition" and "make[s] the plaintiff[s] whole." *Watson*, 352 N.C. at 347, 532 S.E.2d at 178 (citation omitted).

The trial court did not err by strictly construing N.C. Gen. Stat. § 106-903 and finding the foresters were fully compensated for overtime hours paid on a straight time basis. *See Guthrie*, 307 N.C. at 537-38, 299 S.E.2d at 627; *Irving*, 368 N.C. at 611, 781 S.E.2d at 284. Except for the remand to determine the allocation of federal funds reimbursed for costs incurred in fighting the Evans Road Fire, the orders appealed from are affirmed. *It is so ordered.*

AFFIRMED IN PART AND REMANDED.

Judges HAMPSON and GRIFFIN concur.